# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. J. POST, Minor.

UNPUBLISHED
May 10, 2018

No. 340145
St. Clair Circuit Court
Family Division
LC No. 17-000026-NA

Before: CAVANAGH, P.J., and STEPHENS and SWARTZLE, JJ.

PER CURIAM.

Respondent appeals as of right an order terminating her parental rights to her minor daughter, MJP. Respondent's rights were terminated pursuant to MCL 712A.19b(3)(g) (parent failed to provide proper care and custody), after respondent gave birth to MJP while incarcerated, and did not provide MJP with appropriate placement. Respondent contends on appeal that the trial court erred in establishing a statutory ground for termination, and erred in determining that termination was in the best interests of MJP. We affirm.

## I. STANDARD OF REVIEW

"The clear error standard controls our review of both the court's decision that a ground for termination has been proven by clear and convincing evidence and . . . the court's decision regarding the child's best interest." *In re Medina*, 317 Mich App 219, 226; 894 NW2d 653 (2016) (quotation marks and citations omitted). See also MCR 3.977(K). "Appellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009). " 'A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made.' " *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016), quoting *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). "In applying the clear-error standard in parental termination cases, 'regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.' " *Schadler*, 315 Mich App at 408-409, quoting *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

## II. STATUTORY GROUNDS FOR TERMINATION

The petitioner bears the burden to establish by clear and convincing evidence at least one statutory ground for terminating a respondent's parental rights. *In re Gonzales/Martinez*, 310 Mich App 426, 431; 871 NW2d 868 (2015). "To terminate parental rights, a trial court must find

-1-

by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). In this case, the trial court found a statutory ground had been established pursuant to MCL 712A.19b(3)(g). The statute provides:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age. [MCL 712A.19b(3)(g).]

Respondent contends that the trial court erred in establishing the statutory ground because it based its entire decision on respondent's criminal history, as well as the fact that she was incarcerated at the time of the termination hearing. We disagree.

Indeed, "[i]ncarceration alone is not a sufficient reason for termination of parental rights," *In re Mason*, 486 Mich 142, 146; 782 NW2d 747 (2010), and a criminal record alone cannot be grounds for termination if "respondent did not commit [one] of the enumerated crimes listed in MCL 712A.19a(2) or MCL 722.638(1) and (2)," *In re Pops*, 315 Mich App 590, 601; 890 NW2d 902 (2016). However, respondent's contention that the trial court terminated her parental rights with a singular focus on her criminal history is inaccurate.

Testimony at the termination hearing by respondent's former probation officer indicated that, in addition to respondent's criminal history, respondent also had a 15 year history of drug abuse, as well as a history of being unaffected by the countless services that had been offered to her in that time. Additionally, family services professionals testified as to respondent's history of involvement with Child Protective Services (CPS), as well as her involvement in custodial proceedings that led to the termination of respondent's parental rights to five older children in 2013.

In November of 2011, after respondent's older children were removed and later returned to her, CPS received no less than five subsequent complaints in barely over a year alleging, among other things, physical neglect, improper supervision, threatened harm, and substance abuse. The final complaint came after respondent was convicted of retail fraud and tested positive for methamphetamines. The complaint led to the filing of a petition for termination and respondent's ultimate relinquishment of her parental rights. Over the next several years, respondent admittedly continued to struggle with substance abuse, and was convicted of no less than five property and theft related crimes. Respondent had been incarcerated for one of those crimes when she gave birth to MJP.

The referee found that respondent had demonstrated a "chronic, repetitive" proclivity for criminal activity, but also found that respondent had failed to utilize years of family services, instead choosing to continue to live in a way that would not allow her to "provide proper care or custody for the child." Although respondent provided evidence that she had participated and

completed programs in prison, the referee also noted that "all of [those] programs plus many more [had] been available to [respondent] through community resources in the local area [and] through probation requirements for *six years . . . .*" Respondent's "record and prior history establishe[d] that there ha[d] been virtually no period of time in which [respondent had] shown the stability to provide proper care and custody." The trial court ultimately adopted the referee's factual findings, and we cannot disagree with that decision, much less find evidence to support a definite and firm conviction that the trial court was mistaken. Moreover, the referee's findings do not support respondent's contention that the trial court was overly focused on respondent's criminal history or incarceration.

Accordingly, respondent has failed to show that the trial court committed clear error when it found by a preponderance of the evidence that MCL 712A.19b(3)(g) established a statutory ground for the termination of respondent's parental rights.

## III. BEST-INTEREST DETERMINATION

Subsequent to finding a statutory ground for termination by clear and convincing evidence, a trial court "cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *Gonzales*, 310 Mich App at 434. "In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party." *Medina*, 317 Mich App at 237 (quotation marks and citation omitted). "To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include 'the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home' " *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014), quoting *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). Finally, in order to "adequately safeguard the child's interest in a normal family home," the best-interest determination need only be supported by a preponderance of the evidence. *Moss*, 301 Mich App at 89.

The majority of respondent's best-interest argument on appeal focuses on the strong constitutional right of parents, and the irrevocable nature of the termination of parental rights. Respondent's focus is misplaced, however, as the best-interest determination is intended to be a child-centered analysis. See *Medina*, 317 Mich App at 239; *Moss*, 301 Mich App at 87. Any constitutional argument was necessarily implicated in analysis of the statutory ground for termination, and has little bearing on the best-interest determination: "Once the petitioner has presented clear and convincing evidence that persuades the court that at least one ground for termination is established . . . the liberty interest of the parent no longer includes the right to custody and control of the child[]." *In re Trejo Minors*, 462 Mich 341, 355; 612 NW2d 407 (2000), superseded in part by statute on other grounds as recognized by *In re Moss*, 301 Mich App at 83. Accordingly, respondent's argument that the trial court should have considered her constitutional liberty interest as a factor in its best-interest determination is meritless.

Respondent also contends that the trial court failed to consider MJP's placement with a relative, which is a factor that weighs against termination of parental rights. MCL 712A.19a(8)(a) provides: "The court is not required to order the agency to initiate proceedings to terminate parental rights if . . . [t]he child is being cared for by relatives." The Michigan

Supreme Court has interpreted that language as meaning that placement with the relative of a respondent-parent should be "an explicit factor" in the best-interest termination. *Mason*, 486 Mich at 164. "A trial court's failure to explicitly address whether termination is appropriate in light of the [child's] placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Olive/Metts*, 297 Mich App at 43.

In this case, respondent's initial relative placement with MJP's putative father and maternal grandmother turned out to be an inappropriate placement. Respondent left MJP in the care of the putative father, who shortly thereafter was convicted on his own criminal charges, but whose care for MJP prompted concerns regardless, because of a "strong odor of marijuana," and a failure to follow safe sleep practices. Petitioner also noted that respondent's mother, who was to assist the putative father, was not complying with DHHS's placement plan. MJP was removed from the care of the putative father and maternal grandmother, and although MJP was ultimately placed with respondent's cousin, respondent was not responsible for that placement. Petitioner only found the placement after MJP had already been removed and a termination petition was filed. Notwithstanding, the referee appropriately acknowledged that MJP was placed with relatives, and found that MJP's need for stability and safety necessitated the termination of parental rights regardless, as respondent was unable, and would be unable for the foreseeable future, to provide the same. Given respondent's history, her continued incarceration, and her lack of certainty with regard to appropriate housing, employment, and the like, we cannot conclude that the trial court committed clear error when it determined that a preponderance of the evidence weighed in favor of termination.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens
/s/ Brock A. Swartzle