# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
April 28, 2016

No. 328818
Ingham Circuit Court
Family Division
LC No. 14-000732-NA

*In re* E. W. POPS, Minor.

Before: SAWYER, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent-father appeals as of right an order terminating his parental rights to his child, EP, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), MCL 712A.19b(3)(g) (failure to provide proper care and custody), and MCL 712A.19b(3)(j) (reasonable likelihood of harm). For the reasons set forth in this opinion, we reverse.

## I. FACTUAL BACKGROUND

The trial court obtained jurisdiction over EP after respondent pled no contest to petitioner's allegation that he fled from police for a distance of 14 blocks while EP was in his vehicle. Police discovered marijuana and a scale in the vehicle, and respondent was briefly incarcerated pending charges. The petitioner placed EP with respondent's mother, who had been EP's caregiver since birth. However, petitioner removed EP from the grandmother's home and placed him in foster care when it discovered that she had a criminal record and could not obtain a license as a foster-care provider. The prosecutor did not charge respondent for the traffic offense. Instead, respondent agreed to plead guilty to another offense, resisting and obstructing a police officer, and the court sentenced him to 18 months' probation. Respondent engaged in services provided by the petitioner while on probation, but he was sent to prison after his arrest for carrying a concealed weapon. The grandmother twice petitioned the trial court for a guardianship over EP, but the court denied both petitions. The petitioner eventually filed for termination of respondent's parental rights, which the trial court granted. Respondent now appeals as of right.

## II. STANDARD OF REVIEW

Respondent argues that the trial court erred when it found that petitioner established multiple statutory grounds for termination by clear and convincing evidence. The trial court's decision that a ground for termination of parental rights has been proved by clear and convincing

-1-

evidence is reviewed for clear error. *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id.* at 296-297.

## III. STATUTORY GROUNDS FOR TERMINATION

The trial court found that petitioner established three separate grounds for terminating respondent's parental rights: MCL 712A.19b(3)(c)(*i*), MCL 712A.19b(3)(g), and MCL 712A.19b(3)(j).

### A. MCL 712A.19b(3)(c)(*i*) and MCL 712A.19b(3)(g)

Under MCL 712A.19b(3)(c)(*i*), the trial court may terminate a parent's parental rights if the parent "was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and" it finds by clear and convincing evidence that the "conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." A trial court may also terminate a parent's parental rights if it finds by clear and convincing evidence that the parent, "without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g). We address both statutory grounds together.[1]

The trial court held that it was appropriate to terminate respondent-father's parental rights under MCL 712A.19b(3)(c)(*i*) because criminal activity was present at the beginning of the case and criminal activity was still a concern since respondent had been arrested and imprisoned for carrying a concealed weapon. The court explained that there was no indication as to when these conditions would be rectified because respondent-father would be incarcerated until at least April 2016, and it was unlikely that he could provide care for EP immediately after his release. The court also explained that beyond his incarceration, respondent-father did not participate in services on a meaningful level when he had the opportunity and never attended therapy. The court also held that termination was proper under MCL 712A.19b(3)(g) because respondent-father could not provide care or custody during incarceration, and he was unable to provide for an appropriate alternative placement.

With regard to these statutory grounds, respondent argues that he provided proper care and custody by placing EP with the grandmother, who had acted as EP's caregiver since birth. Respondent is correct that Michigan permits an incarcerated parent to achieve proper care and

---

[1] It is appropriate to address MCL 712A.19b(3)(c)(*i*) and (g) together because the Court in *In re Mason*, 486 Mich 142, 164-165; 782 NW2d 747 (2010), did so stating, "each of these grounds requires clear and convincing proof that the parent has not provided proper care and custody and will not be able to provide proper care and custody within a reasonable time."

custody through placement with a relative. *In re Mason*, 486 Mich 142, 161 n 11; 782 NW2d 747 (2010). Our Supreme Court determined that when an incarcerated parent requests placement of his or her children with a relative, "[a]s long as the children are provided adequate care, state interference with such decisions is not warranted." *In re Sanders*, 495 Mich 394, 421; 852 NW2d 524 (2014).

Petitioner's guide for relative placement requires that relatives must become licensed foster care providers.[2] Petitioner's reason for removing EP from the grandmother's home was her inability to become a licensed foster-care provider because of her criminal history. The grandmother's criminal record included a misdemeanor aggravated assault charge in 2005 and a misdemeanor domestic violence charge in 2006. Her record also included convictions for operating with a suspended license in 2007, felony retail fraud in 2010, and misdemeanor retail fraud in 2011. Respondent contends that removal from the grandmother's home was erroneous because petitioner's policy states that relatives disinterested in licensure can apply for a waiver. The department's policy guidelines specifically state that all relative caregivers must become licensed, and that waivers are only appropriate if the relative refuses to pursue licensure or the child is an American Indian.[3] In this case, the determination made by the caseworker was that the grandmother's criminal history made her ineligible for licensure, not that she refused to pursue licensure. Thus, the waiver process cited by respondent was not applicable to the grandmother.

Nevertheless, respondent is correct that petitioner did not follow its own guidelines when it determined that the grandmother could not become a licensed foster care provider because of her criminal record. A foster home applicant must "[b]e of good moral character," Mich Admin Code, R 400.9201(b), but would be outright barred for a prior conviction only if it was for child abuse or neglect, Mich Admin Code, R 400.9205(3). Notably, the *Children's Foster Care Manual: Relative Placement and Engagement*, prohibits placement with a relative caregiver only if there is a *felony* conviction for certain enumerated crimes including spousal abuse or physical assault, battery, or a drug-related offense within the last five years.[4] However, the grandmother had *misdemeanor* convictions for aggravated assault and domestic violence, not felony convictions. Thus, petitioner's own guidelines did not outright bar EP's placement with his grandmother. Petitioner's guidelines potentially bar placement with a relative if the relative

---

[2] *Children's Foster Care Manual: Relative Placement and Engagement*, p 12< http://www.mfia.state.mi.us/OLMWEB/EX/FO/Public/FOM/722-03B.pdf> (accessed February 9, 2016).

[3] *Children's Foster Care Manual: Relative Placement and Engagement*, pp 14-15 < http://www.mfia.state.mi.us/OLMWEB/EX/FO/Public/FOM/722-03B.pdf> (accessed February 9, 2016).

[4] *Children's Foster Care Manual: Relative Placement and Engagement*, p 8 < http://www.mfia.state.mi.us/OLMWEB/EX/FO/Public/FOM/722-03B.pdf> (accessed February 9, 2016).

committed a "good moral character offense" listed in BCAL-Pub-673.[5] Such offenses include convictions for fraud and assault,[6] and the grandmother had convictions for misdemeanor aggravated assault and retail fraud. However, even if the potential relative caregiver has committed a good moral character offense, the caseworker has discretion to place the child with the relative but must evaluate whether there are safety issues with the relative and must seek approval for the placement.[7] Petitioner conducted a home study before removing EP, but we are unable to locate the study in the record. Thus, there is no indication on the record as to whether petitioner considered any potential safety issues stemming from the grandmother's criminal history before removing him from her care. However, at the grandmother's guardianship

---

[5] *Children's Foster Care Manual: Relative Placement and Engagement*, pp 8-9 < http://www.mfia.state.mi.us/OLMWEB/EX/FO/Public/FOM/722-03B.pdf> (accessed February 9, 2016).

[6] *Good Moral Character*, CWL-Pub-673, p 2 http://www.michigan.gov/documents/mdhhs/CWL-PUB-673_498802_7.pdf (accessed March 3, 2016).

[7] More specifically, the policy manual states in pertinent part:

**Good Moral Character Offenses**

If a member of the household has a conviction listed in the BCAL-Pub-673, Good Moral Character, except for those identified above as Prohibited Due to Felony Conviction, caseworkers must evaluate this information to determine whether or not there are safety issues that must be addressed. The assessment must at a minimum include:

- The length of time since the offense.

- The relationship of the conviction to caring for children.

- Any services provided to rectify the problems(s).

- If services were provided, determine if the household member(s) completed and benefitted from the service(s).

- How the offense may impact the safety of the child placed in the home and describe protective interventions currently in place.

This documentation must describe and support the basis for approval, in addition to the reasons the child is safe in the relative's home. Director approval is required; see Director Approval, in this item. [*Children's Foster Care Manual: Relative Placement and Engagement*, pp 8-9 < http://www.mfia.state.mi.us/OLMWEB/EX/FO/Public/FOM/722-03B.pdf> (accessed February 9, 2016).]

hearing, the caseworker stated that she noted no safety concerns relating to the grandmother. Presumably, if the caseworker noted no safety concerns when doing the guardianship study, there would also have been no safety concerns earlier when petitioner removed EP from her home. Consequently, we conclude that petitioner improperly determined that the grandmother's criminal history barred her outright from licensure when petitioner had discretion to place EP with the grandmother after considering safety issues and seeking approval from within the Department of Health and Human Services.

Additionally, the trial court's remaining reasons for termination under MCL 712A.19b(3)(c)(*i*) and (g) were clearly erroneous. The trial court's determination that respondent-father did not participate in services in a meaningful way when he had the opportunity is largely contradicted by the evidence. The caseworker explained that respondent-father attended parenting classes at Cristo Rey, and did not complete the course because she transferred him to a more hands-on supportive visitation program. She reported that he was "doing okay" in the visitation program, missed a few visits because of his probation, and did homework "for the most part." He could not complete the supportive visitation program because of his second incarceration. The caseworker testified that all drug screens were clean, with the exception of one positive screen for alcohol, which was excused by a doctor's note explaining that the positive test was due to taking Nyquil. She agreed that respondent-father missed 15 parenting visits, but she explained that most were due to his incarceration or probation issues. Respondent-father did not participate in the psychological evaluation, but this was because he was incarcerated, and he did not participate in counseling because he could not attend the scheduled intake after he returned to prison. Thus, respondent did participate in services meaningfully while he was not incarcerated. Given this record, we have a definite and firm conviction that the trial court was mistaken when it held that respondent-father did not participate in services on a "meaningful level" when he had the opportunity. After respondent-father returned to prison, he had to complete his GED before he could receive any other services. Thus, he was unable to make significant progress on his case service plan while incarcerated.

The only remaining rationale articulated by the trial court was that respondent-father committed another crime, which resulted in his incarceration a second time. However, incarceration alone is not a sufficient reason for termination of parental rights. *In re Mason*, 486 Mich at 146. If respondent-father provided proper care and custody through placement with the grandmother, incarceration was insufficient to terminate parental rights.

### B. MCL 712A.19b(3)(j)

Under MCL 712A.19b(3)(j), a court may terminate parental rights if it finds by clear and convincing evidence that there "is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." On appeal, respondent argues that the trial court impermissibly terminated parental rights solely because of his criminal history. Respondent was incarcerated at the time of the termination hearing, and the record reflects that he would not be released until either April or August of 2016. The trial court terminated parental rights under this subsection solely because respondent was incarcerated and EP would "obviously" be harmed if returned to respondent. Stated in this way, the court seemed to suggest that returning EP to respondent's care would mean sending the child to live with respondent in prison. However, it is proper to scrutinize the

-5-

likelihood of harm if the child were returned to the parent's home *after* a parent's release from prison. See *In re Mason*, 486 Mich at 165 (holding that termination based on MCL 712A.19b(3)(j) was erroneous where there was no evidence that a parent would harm his children when released from prison). The trial court's brief statement about respondent's current incarceration does not address the likelihood that EP would be harmed based on respondent's "conduct or capacity." Further, petitioner did not present any evidence that respondent ever harmed his child or was likely to harm his child.

To the extent that the trial court's statement implies that respondent's criminal record placed EP in danger, such a finding is clearly erroneous. Our Supreme Court addressed the propriety of terminating parental rights based solely on a parent's criminal record:

> Significantly, just as incarceration alone does not constitute grounds for termination, a criminal history alone does not justify termination. Rather, termination solely because of a parent's past violence or crime is justified only under certain enumerated circumstances, including when the parent created an unreasonable risk of serious abuse or death of a child, if the parent was convicted of felony assault resulting in the injury of one of his own children, or if the parent committed murder, attempted murder, or voluntary manslaughter of one of his own children. MCL 712A.19a(2); MCL 722.638(1) and (2). [*In re Mason*, 486 Mich at 165.]

Respondent's criminal record includes resisting and obstructing a police officer and possession of a concealed weapon. Petitioner asserts that termination is proper because respondent-father admitted to fleeing from the police for 14 blocks while EP was in the vehicle. While this action undoubtedly created a risk of harm, failing to immediately pull over for a traffic stop under these circumstances does not create an "unreasonable risk of serious abuse or death" that would justify termination. *Id*. Further, the trial court could not terminate parental rights based on respondent's criminal record alone because respondent did not commit any of the enumerated crimes listed in MCL 712A.19a(2) or MCL 722.638(1) and (2). For these reasons, we are left with a firm and definite conviction that the trial court clearly erred by determining that termination of parental rights was proper under MCL 712A.19b(3)(j).

Reversed.

/s/ David H. Sawyer
/s/ William B. Murphy
/s/ Amy Ronayne Krause