# STATE OF MICHIGAN

# COURT OF APPEALS

In re J. NAVEIRA, Minor.

UNPUBLISHED
December 14, 2017

No. 339043
Kent Circuit Court
Family Division
LC No. 15-052519-NA

Before: MARKEY, P.J., and HOEKSTRA and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent-mother appeals as of right the order terminating her parental rights to the minor child, JN, under MCL 712A.19b(3)(c)(*i*) (conditions at adjudication continue to exist) and MCL 712A.19b(3)(g) (failure to provide proper care or custody). Because the trial court did not clearly err by terminating respondent's parental rights, we affirm.

Respondent and JN's father have been in a relationship for approximately eight years. Respondent gave birth to JN in July 2015. When JN was born, a drug screening of his meconium and urine tested positive for opiates, specifically morphine, and respondent tested positive for morphine at the hospital.[1] Respondent admitted that she used Vicodin without a prescription during her pregnancy. Respondent also did not have consistent prenatal care, she did not follow prenatal treatment recommendations, and respondent and father lacked stable housing at the time of JN's birth. In September 2015, respondent and father entered pleas to the allegations in the petition. The trial court made JN a ward of the court but allowed JN to remain in his parents' custody. At that time, respondent and father were living with father's parents.

Respondent tested positive for cocaine in September of 2015, January of 2016, and February of 2016. At some point, police raided the home that respondent and father were staying in as part of an investigation for credit card fraud and theft, and police found a crack pipe among respondent's and father's possessions. In March of 2016, the trial court removed JN from his

---

[1] Respondent is also the biological mother of three older children, who have a different father than JN. Respondent's other children were removed from her care in December 2012 due to respondent's and JN's father's substance abuse issues, a failure to abide by a no-contact order between JN's father and the three older children, and financial instability. The biological father obtained sole legal and physical custody of all three older children in September 2013.

parents' care. JN was placed with his maternal grandparents, but two days later, respondent and father kidnapped JN and fled. The following day, respondent and father were stopped by police in Georgia, and JN was found in the car. JN was then placed with a foster family.

Respondent was arrested, and she was in jail until August 2016. When she was released, respondent was on probation for credit card fraud and theft charges. In October 2016, respondent and father used drugs together. They both tested positive for a combination of drugs that included heroin, cocaine, and morphine, with father testing at dangerously high levels. Respondent also tested positive for cocaine approximately two weeks later. In December 2016, respondent was sent to prison for violating parole.

Petitioner filed a supplemental petition for termination, and a termination hearing was held in May of 2017. Respondent was still incarcerated at the time of the termination hearing, and her earliest release date was in November 2017. JN was almost two years old, he had been with his foster-care placement for more than a year, and respondent had been incarcerated for almost half of his life. The trial court found statutory grounds for termination under MCL 712A.19b(3)(c)(*i*) and (g), and concluded that termination was in JN's best interests. Respondent now appeals as of right.

On appeal, respondent first argues that the trial court erred in finding statutory grounds for termination. Specifically, respondent maintains that the trial court erred by concluding that substance abuse was still an issue for respondent at the time of termination and that this condition could not be rectified in a reasonable time. Additionally, respondent contends that the trial court erred by concluding that she had poor parenting skills. According to respondent, the trial court also erred by failing to recognize that she could provide proper care and custody for JN during her incarceration by placing JN with either his paternal or maternal grandparents.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "We review the trial court's determination for clear error." *Id.* "A finding is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010) (quotation marks, citation, and alterations omitted).

The trial court found grounds for termination under MCL 712A.19b(3)(c)(*i*) and (g), which provide that a court may terminate a parent's parental rights, if:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . .

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

-2-

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

"[E]ach of these grounds requires clear and convincing proof that the parent has not provided proper care and custody and will not be able to provide proper care and custody within a reasonable time." *In re Mason*, 486 Mich at 164-165. Under both MCL 712A.19b(3)(c)(*i*) and (g), "[a] lack of cooperation with reunification services, or other court-ordered conditions, can bear on a termination decision, if that lack of cooperation relates to issues of abuse or neglect." *In re LaFrance*, 306 Mich App 713, 729; 858 NW2d 143 (2014).

In this case, at the time of the termination hearing, more than a year and a half had elapsed since the adjudication and initial disposition. The trial court concluded that the primary condition that led to adjudication was respondent's substance abuse issues and that respondent had not made substantial progress in addressing her substance abuse issues. This finding was not clearly erroneous. Respondent's struggle with drug addiction—including heroin, cocaine, marijuana, and prescription drugs—is a lengthy one as evinced by the removal of her three older children in 2012 due to respondent's substance abuse issues. Respondent admitted to drug use during her pregnancy with JN; and, at the time of his birth, JN's meconium and urine tested positive for opiates. Respondent repeatedly tested positive for cocaine while JN was in her care and a crack pipe was found among her possessions during a police raid. Rather than avail herself of opportunities for treatment, respondent kidnapped JN and absconded to Georgia with him. While she was in jail following her arrest in Georgia, she participated in substance abuse treatment, but she did not continue treatment when she was released and she began using a combination of drugs shortly after her release. She was incarcerated in December of 2016 because she failed to comply with the conditions of her probation, including participation in substance abuse classes. At the time of the termination hearing, respondent was still incarcerated. While respondent argues that she has shown progress addressing her substance abuse issues during her most recent incarceration, respondent's history demonstrates that she cannot stay clean when she is not incarcerated. Moreover, respondent had an earliest release date in November of 2017 and estimates were that she would need at least another six months of services before JN could possibly be returned to her care.

On this record, given respondent's failure to show meaningful progress during times when she was not incarcerated, the trial court did not clearly err by concluding that respondent's drug addiction continued to pose a barrier to reunification. Given the length of time that JN had spent in foster care, respondent's failure to comply with her case service plan, and respondent's failure to demonstrate that she could remain sober outside of a prison environment, the trial court also did not clearly err by concluding that there was no reasonable likelihood that respondent would rectify her lengthy struggle with drug addiction within a reasonable time considering JN's age. Cf. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). Thus, the trial court did not err by concluding that termination was appropriate under MCL 712A.19b(3)(c)(*i*). These same facts also support termination under MCL 712A.19b(3)(g).

In contrast to this conclusion, respondent argues that she is a good parent, despite her history of drug addiction, and that the trial court clearly erred by concluding otherwise. We note

that this Court has indicated that "drug use alone, in the absence of any connection to abuse or neglect, cannot justify termination solely through operation of the doctrine of anticipatory neglect." *In re LaFrance Minors*, 306 Mich App at 731. However, this is not a case where the trial court merely speculated that respondent's drug use might affect her parenting of JN. Instead, respondent's parenting decisions—including drug use during her pregnancy, lack of adequate prenatal care, failure to comply with her case service plan, and the decision to abscond with JN—make plain that respondent has not provided proper care and custody for JN and that she will not be able to do so in a reasonable time. On the whole, this is a case where respondent's drug addiction has impacted her parenting decisions and her ability to adequately care for JN, and the trial court did not clearly err by concluding that respondent's parenting was at "the poor level."

Respondent also argues that the trial court erred by terminating respondent's parental rights based on her incarceration without considering whether respondent could provide proper care and custody for the child by placing JN with his grandparents during her remaining incarceration. "The mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination." *In re Mason*, 486 Mich at 160. Rather, "Michigan permits an incarcerated parent to achieve proper care and custody through placement with a relative." *In re Pops*, 315 Mich App 590, 595; 890 NW2d 902 (2016). "[W]hen an incarcerated parent requests placement of his or her children with a relative, as long as the children are provided adequate care, state interference with such decisions is not warranted." *Id.* (citation, quotation marks, and alteration omitted).

In this case, contrary to respondent's contention that she could have provided proper care and custody through placement with relatives, the record does not support respondent's assertion that JN's grandparents were willing and able to provide adequate care for JN while the case was pending. In particular, JN was in placement with his maternal grandparents when he was kidnapped by respondent and his father. Yet, the maternal grandparents waited 12 hours before alerting anyone about the missing child. This inappropriate delay in reporting that JN had been taken from the home resulted in JN being removed from his maternal grandparents and placed in foster care. With regard to JN's paternal grandparents, early in the case, the paternal grandparents were also not recommended as a placement because respondent and JN's father were living with the paternal grandparents when the house was raided and a crack pipe was found in the house. Later, the paternal grandparents became licensed foster parents and they were considered as a placement for JN in February 2017. However, due to health issues, they declined placement at that time because they wanted to be "grandparents" and they were not sure about adopting JN. In short, it appears that placement with grandparents was not an option for providing adequate care for JN, and the trial court did not clearly err in finding that termination was appropriate under both MCL 712A.19b(3)(c)(*i*) and (g).

Finally, respondent argues that termination of her parental rights was not in JN's best interests. Specifically, respondent reiterates her assertion that JN should have been placed with either his maternal or paternal grandparents in lieu of termination.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "The trial court must find by a

preponderance of the evidence that termination is in the best interests of a child." *In re Jones*, 316 Mich App 110, 119; 894 NW2d 54 (2016). We review a trial court's best interests determination for clear error. *Id.*

"In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption," *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014), and "whether it is likely that the child could be returned to her parents' home within the foreseeable future, if at all," *In re Jones*, 316 Mich App at 120 (quotation marks and citation omitted). "Moreover, a trial court must explicitly address whether termination is appropriate in light of the children's placement with relatives." *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016) (quotation marks and citation omitted).

In this case, the trial court found that respondent loved JN, but that the child's bond to respondent was "remote" because respondent had been incarcerated the majority of JN's life and, when not incarcerated, respondent declined additional parenting time. The trial court found that respondent's parenting ability was poor because she made decisions that were not child-centered, such as kidnapping JN, and she had prioritized her relationship with JN's father over the child. The trial court also found that JN needed permanency, stability, and finality because he was nearly two years old and he had been "in the system," waiting for respondent to address her substance abuse issues, since he was born. The trial court also looked at respondent's noncompliance with her service plan, and noted respondent's "long history" of failing to make progress. With regard to placement with a relative, although respondent argues JN could have been placed with his grandparents in lieu of termination, as discussed, JN was in foster care and there were sound reasons why JN was in a non-relative placement. Furthermore, the trial court explicitly addressed the possibility that the child could be placed with his grandparents in the future, but the trial court nevertheless found termination appropriate because JN needed permanency. Cf. *In re Schadler*, 315 Mich App at 412. Overall, the trial court did not err in finding that termination was in JN's best interests.

Affirmed.

/s/ Jane E. Markey
/s/ Joel P. Hoekstra
/s/ Amy Ronayne Krause