*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re E. SANCHEZ, Minor.

UNPUBLISHED
February 12, 2019

Nos. 341113; 342062
Ingham Circuit Court
Family Division
LC No. 15-000558-NA

Before: METER, P.J., and K. F. KELLY and GLEICHER, JJ.

GLEICHER, J. (*concurring in part and dissenting in part*).

Respondents are the parents of ES, now age five. ES was removed from respondent-father's home in 2015 and placed with his maternal grandmother, Gail Black. During the next three years, ES spent considerable time with his paternal grandmother, Anna Rios. Indeed, Rios had been the boy's primary caretaker before the state removed him.

At the preliminary hearing, a DHHS worker pledged to evaluate placement with Rios by "go[ing] out to the home." But an investigation was never performed. The DHHS subsequently determined that Rios had a drug-related conviction, decided that she would never be eligible for placement, and made no further effort to consider her as a caregiver.

Nevertheless, Rios persistently sought grandparenting time with ES. A stipulation allowed her to visit regularly. And respondent-father's counsel repeatedly requested that the DHHS investigate placement with Rios. Aside from maintaining that Rios's drug-related conviction disqualified her, the DHHS never presented any evidence of that conviction or information about its circumstances.

I believe that respondent-father's efforts to secure placement with Rios should have been considered both as a legal basis to preserve his parental rights and as "an explicit factor . . . in determining whether termination was in the child[]'s best interests." *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). Had the DHHS actually supported its decision to disqualify Rios, respondent-father would have had a reason to champion ES's placement with Black. Absent evidence of Rios's disqualification, the trial court was bound to credit respondent-father's efforts to secure placement with Rios when assessing whether termination was legally justified and whether it served ES's best interests. I would remand for both reviews.

# I

As the majority opinion explains, respondent-mother lost her parental rights because of her persistent drug use and respondent-father is incarcerated for selling heroin. As to respondent-mother, the majority finds the trial court's best-interest determination wanting because the court failed to consider ES's placement with Black. This gap necessitates a remand, the majority holds, and I concur. Respondent-father also seeks a remand, contending that his efforts to secure placement with Rios entitle him to the presumption against termination discussed in *In re Mason*, 486 Mich 142; 782 NW2d 747 (2010), and embodied in MCL 712A.19a(4)(d).

In *Mason*, the Supreme Court addressed the legal framework that applies when the DHHS seeks to terminate the parental rights of an incarcerated parent. The Court emphasized that "[t]he mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination." *Id*. at 160. When a child of an incarcerated parent is placed with a "fit and willing" relative, the parent has provided proper care and custody, undermining the State's ability to prove statutory grounds for termination. *Id*. at 163-164; see also MCL 712A.19(4)(d). The Court also highlighted a separate and distinct concept: placement with a relative "weighs against termination" when a child's best interests are served by that placement. Thus, placement with a relative has a dual impact in termination proceedings. It potentially negates the *legal* bases for depriving a parent of his constitutional right to the custody of his child, and advances the interest of the child in preserving a relationship with the parent and the parent's family.

It is fitting that relative placement bears so substantially in a court's termination decision. The importance of a parent's precious right to raise his or her child is well established in our jurisprudence. *In re Williams*, 286 Mich App 253, 280; 779 NW2d 286 (2009) (GLEICHER J., concurring). A parent facing incarceration (or another life-uprooting event) who proactively arranges for a relative to care for a child has safeguarded and served a child's welfare, demonstrating fitness rather than unfitness. Further, conceptualizing relative placement as a reason to forego termination harmonizes with our respect for the role of extended family. The Supreme Court has repeatedly recognized that parents who engage family for support with childrearing have acted conscientiously rather than recklessly. "The tradition of uncles, aunts, cousins, and especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition. Over the years millions of our citizens have grown up in just such an environment, and most, surely, have profited from it." *Moore v City of E Cleveland, Ohio*, 431 US 494, 504-505; 97 S Ct 1932; 52 L Ed 2d 531 (1977). See also *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982) ("The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs.").

When a child is placed within a loving extended family, the State's interest in permanently disrupting the child's relationship with an absent parent surely fades. Our Legislature explicitly adopted this philosophy when it recently amended MCL 712A.19a to mandate that courts developing permanency plans determine whether a child "may be permanently placed with a fit and willing relative." MCL 712A.19a(4)(d). Moreover, the amendment directs that courts may place children in "another planned permanent living arrangement" only when "the agency has documented to the court a compelling reason for determining that it would not be in the best interest of the child" to be returned to his or her parents, guardian, or legal custodian; placed in a guardianship; permanently placed with a fit and willing relative, or that a termination petition be filed. MCL 712A.19a(4)(e).

The trial court should have considered ES's placement with Black when it assessed the statutory grounds invoked by petitioner to terminate respondent-father's parental rights *and* when it considered ES's best interests. I address each stage of the proceedings separately.

III

The governing statute, MCL 712A.19b(3)(h), authorizes termination of the rights of an incarcerated parent only when three conditions are met: (1) "the child will be deprived of a normal home for a period exceeding two years"; (2) "the parent has not provided for the child's proper care and custody"; and (3) no reasonable likelihood exists that the parent will be able to properly care for the child "within a reasonable time considering the child's age." *Mason*, 486 Mich at 163, established that an imprisoned parent could provide for a child's care and custody despite his incarceration "by voluntarily granting legal custody to his relatives during his remaining term of incarceration."

Respondent-father premises his appellate arguments on the trial court's termination decision rather than its best-interest determination. *Mason* paved the way for this strategy. In *Mason*, as here, the DHHS advanced two grounds for the termination of the respondent-father's rights: MCL 712A.19b(3)(c)(*i*) and MCL 712A.19b(3)(g). Both statutory grounds require the petitioner to present clear and convincing proof that the parent has not provided the child with proper care and custody, and will not be able to do so within a reasonable time. The Supreme Court highlighted that an incarcerated parent may fulfil this "care and custody" obligation by arranging for a family member to assume parental responsibilities during the parent's incarceration. *Id*. at 163-164.

The majority advances several grounds for rejecting respondent-father's statutory grounds arguments. According to the majority, a DHHS foster care worker claimed that Rios "had a 'previous drug history' that would exclude her from becoming [a] foster parent 'due to the nature of the case.' " Although the DHHS advanced that argument, it failed to factually support it.

The record contains no evidence of any conviction. Respondent-father's counsel advised the court that Rios's conviction was more than 10 years old and had been expunged. None of the DHHS witnesses ever refuted this. It remains entirely unknown whether Rios was convicted of a misdemeanor or a felony, marijuana possession or something more serious. This gap in the record contravenes the DHHS's policy, which requires that "[a]ll caregivers" have a state

criminal history check "documented" on a specific form. See *Children's Foster Care Manual: Relative Placement and Engagement* (January 1, 2018), p 9. That form is not in the record. Further, a caregiver with a "good moral character" conviction[1] "is not completely disqualified from placement consideration; children may be placed with the caregiver upon completion and director approval" of a home assessment. *Id*. Additionally, MCL 722.954a requires the DHHS to provide written notice of a placement decision and the reasons supporting it within 90 days after the child's removal. No such decision was provided regarding Rios.

The record supports that the DHHS never attempted to vet Rios as ES's caregiver, likely because it was easier to simply rely on the stable status quo: placement with Black. And while I can understand this choice, I interpret DHHS policy and the law as requiring background studies for relatives identified by *both* parents. The Children's Foster Care Manual states, "Throughout the case, caseworkers must continue to identify, notify, and engage relatives until the child achieves legal permanency[.]" *Children's Foster Care Manual: Relative Placement and Engagement*, p 3. There is no evidence that the DHHS fulfilled this obligation. Yet despite the hole in the record created by DHHS's failure to follow its own rules, the trial court uncritically adopted the DHHS's claims that Rios was disqualified from placement and that respondent-father's endeavor to place ES with her could be ignored.

The majority correctly observes that respondent-father's brief on appeal frames his argument as an attack solely on the statutory grounds for termination of his rights and not on ES's best interests. This is understandable, given that *Mason* fully supports this claim. Respondent-father's brief also relies heavily on this Court's opinion in *In re Pops*, 315 Mich App 590, 595-596; 890 NW2d 902 (2016), in which we took the DHHS to task for failing to conduct an appropriate investigation into the suitability of a relative caregiver with a history of a criminal conviction. In *Pops*, the respondent-father's rights were terminated despite that his grandmother likely could have qualified as a foster parent had the DHHS done its homework. In that case, we observed that the petitioner "improperly determined that the grandmother's criminal history barred her outright from licensure when petitioner had discretion to place [the child] with the grandmother after considering safety issues and seeking approval from within the DHHS." *Id*. at 598. The DHHS's omission proved critical to our conclusion that "if respondent provided proper care and custody through placement with the grandmother, incarceration was insufficient to terminate parental rights." *Id*. at 599.

*Mason* and *Pops* counsel that when considering an incarcerated parent's effort to achieve relative placement, the issue is not whether a relative of that particular parent actually succeeded in obtaining custody, but whether the respondent made a genuine effort to secure relative placement, thereby providing proper care and custody. Adopting a rule that bestows the benefit of relative-placement efforts only on the respondent with the relative selected by the DHHS is dangerous and counterproductive, potentially igniting legal contests between caring kin, or a withdrawal of willing cooperation. The relevant question is whether the parent tried, in good

---

[1] A "good moral character" conviction includes a felony conviction for "[o]ffenses involving narcotics, alcohol or controlled substances[.]" Mich Admin Code, R 400.1152(1)(e)(*xii*).

faith, to provide relative care. Penalizing a parent for the DHHS's choice among otherwise qualified relatives contravenes the spirit of *Mason* and the letter of *Pops*.

IV

Respondent-father's efforts to place ES with Rios also should have informed the trial court's best-interest determination. In *Mason*, 486 Mich at 164, the Court instructed:

> [A] child's placement with relatives weighs against termination under MCL 712A.19a(6)(a), which expressly establishes that, although grounds allowing the initiation of termination proceedings are present, initiation of termination proceedings is not required when the children are "being cared for by relatives." Thus the boys' placement with respondent's family was an explicit factor to consider in determining whether termination was in the children's best interests, yet placement with relatives was never considered in this regard.

Post-*Mason*, this Court underscored the role of relative placement in *In re Olive/Metts*, 297 Mich App 35, 43; 823 NW2d 144 (2012), holding that "[a] trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." The facts of *Olive/Metts* also support my conclusion that respondent-father is entitled to a remand.

The respondent in *Olive/Metts* was the mother of five children. The two youngest (twins) were fathered by a different man than the three eldest. *Id*. at 37-38. This Court affirmed that statutory grounds existed for the termination of respondent's parental rights based on her unresolved anger problems, her abuse of the oldest child, and her incarceration at the time of the termination hearing. *Id*. at 39-40. We held that the trial court was required to evaluate the best interests of each of the five children individually, and vacated the trial court's findings regarding the two youngest children, who "were residing with a *paternal* relative." *Id*. at 43-44 (emphasis added). It did not matter to this Court that the father's relatives had custody of the child rather than respondent-mother's. We instead recognized that relative care is a factor that must be taken into account—"A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id*. at 43.

Summarizing, in *Mason*, the Supreme Court held that placement with a relative "weighs against" termination, and in *Olive/Metts*, this Court held that a trial court must specifically address relative placement during its best-interest evaluation. Neither case specifies the degree to which relative placement "weighs against" termination. Does a presumption emerge that relative placement is in the child's best interests, given the Legislature's commitment to shielding parents who arrange for relative placement against the termination of their parental rights? Applying the language of *Mason* in this manner makes sense to me, as it fully comports with the Legislature's general approach and shifts the burden to the petitioner to explain why termination is required despite relative placement. I would hold the DHHS to this obligation on remand.

The record reveals that respondent-father's efforts to achieve relative placement were diligent, made in good faith, and warranted the trial court's consideration on both statutory and best-interest grounds. Because respondent-father's rights were terminated under two statutory grounds requiring clear and convincing evidence that he failed to provide proper care and custody of his child, evidence of his efforts to do so should have been considered by the circuit court before the court adopted the petitioner's argument that statutory grounds existed to terminate his parental rights. If the DHHS had adequately supported its decision to rule out Rios as a relative caregiver, respondent-father nevertheless would have been entitled to advocate for relative placement with Black. The record reveals that respondent-father helped arrange for ES to be moved to Black's home several days before his arrest. His counsel avers that respondent-father would readily acknowledge Black's suitability as ES's caregiver. These circumstances dictate that on remand, the circuit court consider whether respondent-father's approach to ES's care and custody supplied a best-interests factor weighing against termination for the same reasons that it weighs against termination in respondent-mother's case.

Our state's child welfare system recognizes and appreciates the importance of the emotional bond between a parent and his child. Termination of parental rights may be denied on this basis standing alone. Indeed, the trial court initially refused to terminate respondents' parental rights, in part because ES was placed with relatives and respondents had worked hard to retain their bonds with their child. By all accounts, ES's placement with Black is secure and beneficial for the child. Before severing ES's bond with his parents, I would require the circuit court to determine whether maintaining the bond, as contemplated in *Mason* and *Olive/Metts*, would strengthen ES's emotional ties to his extended family and enhance his future stability. I would remand for this purpose, as well.

/s/ Elizabeth L. Gleicher