*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MENDOZA, Minors.

UNPUBLISHED
January 24, 2025
2:50 PM

No. 367824
Oakland Circuit Court
Family Division
LC No. 2016-848985-NA

Before: FEENEY, P.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

Respondent-father appeals as of right an August 15, 2023 order terminating his parental rights to his minor children: SAM1, SAM2, and SJM. The trial court terminated respondent's parental rights under MCL 712A.19b(3)(h) (parent imprisoned for such a period the children would be deprived of a normal home for more than two years).[1] We affirm.

## I. BACKGROUND

This matter began when petitioner, the Department of Health and Human Services (DHHS), filed a petition in November 2016. In relevant part, the petition alleged the children were without proper care and custody because respondent and the children's mother were in Oakland County Jail because they were facing felony charges. It was alleged the children, who were placed with a relative[2] before respondent and the children's mother entered jail, sustained severe physical abuse while in the relative's care at the hands of a third party. It was later alleged in an amended petition that three-year-old SAM1, whose teeth were rotting, was subjected to medical neglect. DHHS requested that the trial court authorize the petition, place the children in the care of DHHS,

---

[1] The children's mother is not a party to this appeal. We acknowledge three different judges presided over this matter, which spanned more than six years. For purposes of brevity, and because it does not impact the outcome on appeal, we refer only to "the trial court."

[2] Respondent's brother was caring for the three young children but without a Power of Attorney or other legal permission to make medical or other important decisions regarding the children.

-1-

and exercise jurisdiction. An ex parte order was entered requiring the children be placed in care. The children were ultimately placed in a nonrelative foster home where they would remain for the duration of the proceedings. After a preliminary hearing, the trial court authorized the petition. Parenting time was suspended.

While the matter was pending, respondent and the children's mother were convicted of crimes and sentenced to terms of imprisonment. In April 2017, respondent and the children's mother pleaded *nolo contendere* to allegations in the amended child protective proceeding petition. The trial court exercised jurisdiction. After initial dispositional hearings were held, respondent and the children's mother were ordered to comply with their respective case-service plans. Respondent and the children's mother were permitted to have supervised, telephonic parenting time with the children. The children's mother, whose earliest release date was in November 2019, was also permitted to have in-person parenting times with the children at the prison where she was housed. After seven parenting times, however, it was determined visiting the prison was harmful to the children. In-person parenting time was suspended while the children's mother remained incarcerated. Respondent never had in-person parenting time at any prison facility.

In November 2019, the children's mother was released from prison. She began participating in services and in-person parenting time. At times, respondent agreed to forgo telephonic parenting time with the children so they could focus on developing a bond with their mother. Respondent occasionally wrote the children letters and made them cards, which was encouraged. The children's mother was granted unsupervised parenting time for a period of time, and she obtained independent housing. Because the children's behavior worsened and there were safety concerns regarding parenting time, unsupervised parenting time reverted to supervised parenting time. The children's behavior at parenting times continued to worsen despite efforts to improve the quality of the parenting time. In September 2021, DHHS filed a supplemental petition for termination of parental rights.

The termination hearing was held between November 2021, and June 2022. Whether the children's mother benefited from services and whether DHHS truly made reasonable efforts to reunify the children with their mother were hotly contested issues. Testimony supported the children were not bonded with their mother and did not know respondent. The children did not want to attend parenting time with their mother and wanted to remain in their foster home.

After taking the matter under advisement, in August 2022, the trial court found termination of the parental rights of the children's mother was improper because DHHS failed to make reasonable efforts to reunify the children with her. Because respondent's plan for permanency was returning the children to their mother's care, his parental rights were not terminated. The children's mother was referred to additional services, including individual therapy and family therapy with the children. Respondent agreed to the suspension of his parenting time so the children could focus on developing a bond with their mother. In February 2023, however, another supplemental petition was filed after the children's mother (1) no longer had independent housing; (2) failed to provide proof of income; (3) failed to resume individual therapy; (4) failed to develop a healthy bond with the children, who continued to behave negatively in relation to parenting times; and (5) failed to communicate with the children's medical and service providers, of which there were many because of the children's extensive special needs.

After a statutory grounds hearing, which was held in May 2023, the trial court found statutory grounds to terminate the parental rights of the children's mother and respondent. In an order entered on May 17, 2023, the trial court held DHHS established termination of respondent's parental rights was proper under MCL 712A.19b(3)(h). In August 2023, after conducting the best-interests hearing, the trial court found it was in the best interests of the children to terminate respondent's and the children's mother's parental rights. The trial court's August 15, 2023 order reflected this ruling, and this appeal followed.

## II. STANDARD OF REVIEW AND ANALYSIS

Respondent argues the trial court clearly erred by finding a statutory ground, or grounds, to terminate his parental rights. We disagree. "We review for clear error the trial court's finding that there are statutory grounds for termination of a respondent's parental rights." *In re Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 364195); slip op at 2.

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted). Importantly, the clear and convincing evidence standard is "the most demanding standard applied in civil cases[.]" *Id.* (alteration in original; quotation marks and citation omitted). "[T]he trial court . . . may take into consideration any evidence that had been properly introduced and admitted at the adjudication trial, MCR 3.997(E), along with any additional relevant and material evidence that is received by the court at the termination hearing, MCR 3.997(H)." *In re Mota*, 334 Mich App 300, 316; 964 NW2d 881 (2020).

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(h),[3] which permits termination when:

> The parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not provided for the child's proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

However, "[t]he mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination." *In re Mason*, 486 Mich 142, 160; 782

---

[3] Respondent argues the trial court did not state under which statutory ground, or grounds, it was relying on to terminate respondent's parental rights. The trial court's findings of fact support the trial court terminated respondent's parental rights under MCL 712A.19b(3)(h). Additionally, the trial court's May 17, 2023 order held termination of respondent's parental rights was proper under MCL 712A.19b(3)(h). "Trial courts speak through their written judgments and orders." *Seifeddine v Jaber*, 327 Mich App 514, 523; 934 NW2d 64 (2019).

NW2d 747 (2010). The first two requirements under MCL 712A.19b(3)(h) permit "a parent to provide for a child's care and custody *although the parent is in prison*; he need not *personally* care for the child." *Id*. at 161. A parent can provide proper care and custody through a relative. *Id*. at 161 n 11. The third requirement "is forward-looking; it asks whether a parent 'will be able to' provide proper care and custody within a reasonable time. Thus, a parent's past failure to provide care because of his incarceration also is not decisive." *Id*. at 161. The two-year period in which a court considers whether a child will be deprived of a normal home is calculated from the date termination is sought, rather than the date the parent's incarceration began. See *id*. at 162.

With respect to the first requirement, in 2017, respondent pleaded *nolo contendere* to (1) one count of first-degree home invasion, (2) one count of armed robbery, and (3) two counts of possession of a firearm during the commission of a felony (felony-firearm). Respondent was sentenced to 9 to 20 years' imprisonment for the first-degree home invasion conviction, 12 to 40 years' imprisonment for the armed robbery conviction, and two years' imprisonment for each felony-firearm conviction. The felony-firearm sentences were to be served consecutive to the other sentences. At the time of the May 15, 2023 statutory grounds hearing, respondent was still incarcerated. Undisputedly, respondent's earliest release date is July 15, 2030, which is well over the two-year statutory period provided in MCL 712A.19b(3)(h). Additionally, respondent has no guarantee of being granted parole in 2030. In short, the evidence demonstrated respondent was incarcerated for a period exceeding two years such that the children would be deprived of a normal home. See MCL 712A.19b(3)(h).

With respect to whether respondent provided for the children's proper care and custody, it is undisputed respondent could not provide the children with care and custody personally. "Michigan permits an incarcerated parent to achieve proper care and custody through placement with a relative." *In re Pops*, 315 Mich App 590, 595; 890 NW2d 902 (2016), citing *In re Mason*, 486 Mich at 161 n 11. "[W]hen an incarcerated parent requests placement of his or her children with a relative, [a]s long as the children are provided adequate care, state interference with such decisions is not warranted." *In re Pops*, 315 Mich App at 595 (alteration omitted; quotation marks and citation omitted).

The children entered foster care after they were subjected to life-threatening physical abuse while in the care of respondent's brother. The children remained in the same nonrelative foster home for the duration of the lengthy proceedings—more than six years. Respondent argues he could have provided care and custody through a relative, but DHHS did not take adequate action to aid in any relative placement. Notably, neither respondent nor the children's mother facilitated placement with a relative who could appropriately care for the children. This is referenced repeatedly on the record. It is also referenced in the confidential file, of which the trial court took judicial notice. A myriad of court reports, which span from August 2017, to August 2023, support the conclusion that DHHS investigated the relative placements suggested by respondent and the children's mother throughout the proceedings. Unfortunately, the placements were not appropriate. An August 2023 report states: "There have been no additional relatives identified and deemed appropriate for placement, care, and supervision of the children during this reporting period. [The children's mother] has continually reported she does not want to engage her family in her case."

In sum, respondent did not provide the children with proper care and custody through a relative. Cf. *In re Mason*, 486 Mich at 163-164 (noting, at the request of the children's mother, "the children had already been successfully placed with [the father's] family—presumably the very people with whom respondent would have voluntarily placed them had the [DHHS] not already taken custody of them by the time [the father] was notified of [the mother's] neglect"). Contrary to respondent's arguments, DHHS was not inadequate in its efforts to find and place the children with a relative. The second requirement under MCL 712A.19b(3)(h) is therefore satisfied.

The third factor is also satisfied. Indeed, there is no reasonable expectation respondent will be able to provide proper care and custody within a reasonable time considering the children's ages. See MCL 712A.19b(3)(h). At the time of termination, the children had been in care for more than six years. SAM1 was now 10 years old, SAM2 was 8½ years old; and SJM was 7½ years old. Respondent, who had been imprisoned since mid-2016, had not seen the children in person since July 2016. Respondent estimated he spoke to the children on the telephone 10 times during the lengthy proceedings. Respondent acknowledged the telephonic parenting times did not go well. Even when not considering the times respondent's telephonic parenting times were suspended, respondent was only able to participate "about half the time or so" because of complications within the prison system. Respondent failed to consistently send cards and letters to the children. And respondent acknowledged the children did not know him.

Additionally, respondent was unable to participate in services during the proceedings because of his incarceration. As a result, DHHS and the trial court were never able to assess respondent's parenting abilities. Respondent offered no practical or concrete plans for employment or other support to enable him to care for the children, who have extensive special needs, when he is released from prison. Respondent also did not name an appropriate relative who would be able to care for the children in the near future. Because the children were not placed with a relative and respondent offered no concrete plans relating to the children's care when he is released from prison, the trial court did not clearly err by determining respondent could not provide proper care and custody for the children in a reasonable time considering their ages. Cf. *In re Mason*, 486 Mich at 163 (noting the children were placed with relatives and the father "remained in contact with his children through cards and arranged for a home and legal income upon his release from prison").

## III. CONCLUSION

Termination of respondent's parental rights was proper under MCL 712A.19b(3)(h). The trial court did not clearly err. We affirm.

/s/ Kathleen A. Feeney
/s/ Brock A. Swartzle
/s/ Thomas C. Cameron

-5-