*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. SAFFOLD, Minor.

UNPUBLISHED
May 27, 2025
2:19 PM

No. 371896
Macomb Circuit Court
Family Division
LC No. 2021-000294-NA

Before: M. J. KELLY, P.J., and SWARTZLE and ACKERMAN, JJ.

PER CURIAM.

The trial court terminated respondent-father's parental rights. Respondent-father argues that he was denied effective assistance of counsel and that termination was not in KS's best interests. We affirm.

In 2020, respondent-father was arrested and charged with first-degree criminal sexual conduct (CSC) against a minor under 13 years of age. Respondent-father subsequently pleaded guilty to second-degree CSC, MCL 750.520c(2)(b), admitting as part of his plea that he forced his younger sister to perform fellatio on him. Respondent-father also pleaded guilty to child sexually abusive activity. MCL 750.145c(2). Respondent-father's earliest release date is April 2027, with a latest release date of April 2040. Although uncharged conduct, it is evident from the record that respondent-father impregnated KS's mother when she was about 13 years old, and he was an adult.

KS was first placed with his foster mother in March 2018, at which time he was 19 months old. KS lived on-and-off with her in the subsequent years, returning twice to live with his mother. In March 2022, the Department of Health and Human Services (DHHS) petitioned the trial court to terminate respondent-father's parental rights.

During a February 2022 hearing, respondent-father's counsel requested that there be communication between respondent-father and KS while respondent-father was incarcerated, to which the lawyer-guardian ad litem (LGAL) objected on the basis that respondent-father and KS had never had contact. During a November 2023 pretrial hearing, respondent-father's counsel stated that he had previously requested virtual visits between respondent-father and KS while respondent-father was incarcerated, which had been denied, and he was again requesting it. The

-1-

LGAL explained that she objected because KS did not "even know who [respondent-father] is." The trial court continued its previous order that therapeutic visits would occur once respondent-father was released from prison.

Respondent-father ultimately pleaded no contest to allegations in the petition and stipulated that clear-and-convincing evidence supported termination under MCL 712A.19b(3)(g), (h), and (j). Respondent-father also agreed that petitioner made reasonable efforts toward reunification. KS's mother forfeited her parental rights to KS in December 2022.

The trial court held a best-interest hearing in July 2024, during which testimony established that KS's foster mother had taken care of KS for a majority of the time from his first removal in 2018 to the best-interest hearing. KS was bonded to his foster mother and was thriving in her care. KS did not know respondent-father and never asked about him. KS had told friends that he did not have a father, and he expressed that he wanted his foster mother to adopt him. Further, respondent-father had not had contact with KS and had not provided financial support, gifts, or cards for KS. KS had various special needs, including anxiety and cerebral palsy, and KS's foster mother was meeting his medical and emotional needs. Further, his foster mother facilitated KS's relationships with his siblings in other placements.

A foster-care specialist, Brandon Youngblood, testified that respondent-father had Youngblood's contact information, and respondent-father had shared contact information for some of his relatives in early 2024, but KS's paternal grandfather failed to stay in contact with Youngblood. Youngblood was unaware of any of respondent-father's relatives coming to court hearings or providing any type of support for KS throughout the case, and Youngblood did not think that it would be in KS's best interests to place him now with a relative because of his close bond with his foster mother. Youngblood opined that the foster mother could provide KS with permanency, stability, and finality and that it was in KS's best interests to terminate respondent-father's parental rights.

Respondent-father also testified. He explained that he only pleaded guilty to his criminal charges to avoid a longer prison sentence and did not assault his sister. Respondent-father first testified that he wanted his family to take care of KS while he was in prison, but later testified that KS should remain with his foster mother until respondent-father was released. Respondent-father stated that none of his relatives had come forward to take care of KS while he was in care.

The referee found that termination was in KS's best interests because of respondent-father's history of sexually assaulting minors and that KS would be emotionally harmed if told of respondent-father's history and removed from his foster mother. Further, respondent-father had not made any effort to provide for or contact KS. The referee noted KS did not now, at eight years old, know respondent-father. KS had special needs that respondent-father had not addressed, and KS needed permanency that respondent-father could not provide. KS's foster mother wanted to adopt him, and she could meet his needs. The referee also found that respondent-father had only recently identified relatives for potential placement, but they were not present and had not attempted to support or communicate with KS. Finally, the referee found that removing KS from his foster mother would not be in his best interests. The trial court adopted the referee's recommendations and issued the termination order.

Respondent-father now appeals.

First, respondent-father argues that he received ineffective assistance of counsel. Claims of ineffective assistance of counsel are mixed questions of fact and law. *In re Casto*, 344 Mich App 590, 610; 2 NW3d 102 (2022). "We review for clear error a trial court's factual findings, and questions of constitutional law are reviewed de novo." *Id*. Clear error exists when this Court is left with a definite and firm conviction that the trial court made a mistake. *Id*. If a party fails to preserve a claim of ineffective assistance of counsel, then this Court's review is limited to mistakes apparent on the record. *In re LT*, 342 Mich App 126, 133; 992 NW2d 903 (2022).

To establish ineffective assistance of counsel in a child-protective proceeding, "it must be shown that (1) counsel's performance was deficient, falling below an objective standard of reasonableness, and that (2) the deficient performance prejudiced the respondent." *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). This Court may not "substitute its judgment for that of counsel's on matters of litigation strategy, and counsel's performance must be judged based on the knowledge, expertise, and information reasonably available when counsel formulated and implemented the litigation strategy." *Casto*, 344 Mich App at 612. To establish prejudice, a party must demonstrate that, but for counsel's error, a different result would have been reasonably probable. *Id*. at 621. "The effective assistance of counsel is presumed, and a party claiming ineffective assistance bears a heavy burden of proving otherwise." *Id*. at 612.

Respondent-father argues that trial counsel failed to request that he be permitted to visit with KS. The record shows, however, that trial counsel requested that respondent-father be permitted to communicate with KS despite being incarcerated. Accordingly, respondent-father has not shown that counsel's performance was objectively deficient or prejudiced him.

Respondent-father also argues that trial counsel was ineffective for failing to ask the foster-care workers about relative placements. Even if trial counsel was ineffective for failing to ask about relative placements before the best-interest hearing, respondent-father has not demonstrated prejudice because the DHHS communicated with the relatives that respondent-father identified in 2024, years after KS was first removed, and did not find any suitable placements. The DHHS had a requirement to investigate relative placements, see MCL 722.954a(2), which it did, and respondent-father has not shown how questions from trial counsel about the issue would have altered the trial court's termination findings. Moreover, respondent-father effectively concedes that he was not prejudiced with respect to the DHHS's efforts to locate a relative placement by stipulating that the DHHS made reasonable efforts toward reunification, which includes the obligation to investigate relative placements. "A party cannot stipulate a matter and then argue on appeal that the resultant action was error." *Holmes v Holmes*, 281 Mich App 575, 588; 760 NW2d 300 (2008) (cleaned up).

Respondent-father also argues that trial counsel did not question the witnesses about the provision of services. Even assuming that this was deficient performance, there is no basis to find that the failure to question prejudiced respondent-father because the trial court's termination decision did not depend on whether respondent-father engaged in services. Accordingly, respondent-father could not have avoided termination by engaging in additional services or by trial counsel further addressing those services. Moreover, again, respondent-father stipulated that the DHHS made reasonable efforts, which includes the provision of services. See *In re Atchley*, 341

Mich App 332, 338; 990 NW2d 685 (2022). Respondent-father has not argued on appeal that it was erroneous for trial counsel to stipulate to statutory grounds or reasonable efforts, and respondent-father has not demonstrated that he was prejudiced by trial counsel's performance.

Finally, respondent-father argues that the trial court clearly erred by finding that termination was in KS's best interests because respondent-father could still form a bond with KS. We review for clear error a trial court's determination about a child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). Clear error exists when this Court is left with a definite and firm conviction that the trial court made a mistake. *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020).

When a "court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights." MCL 712A.19b(5). To make the best-interest determination, the trial court should consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App at 713 (cleaned up). Other potential factors include the parent's domestic-violence history, compliance with the case-service plan, visitation history, and the child's well-being in care and possibility of adoption. *Id*. at 714.

Respondent-father argues that the DHHS failed to investigate relative placements, but respondent-father only provided relative placements in early 2024, at which point KS had spent much of his life, since 2018, with his foster mother. Even respondent-father testified at the best-interest hearing that it was in KS's best interests to remain with his foster mother until respondent-father was released from prison. The record shows that KS did not know or ask about respondent-father and believed that he did not have a father, evidencing that there was no bond between KS and respondent-father. There is no evidence that respondent-father tried to write letters or send gifts to KS, or even that respondent-father had any parenting skills. Respondent-father argues that KS's contact information was withheld from him, but there is no evidence that he ever asked Youngblood or anyone else for the contact information or was denied contact information before his incarceration.

Instead, the record shows that respondent-father had a history of sexually assaulting minors. Respondent-father stipulated that there was clear-and-convincing evidence that there was a reasonable likelihood of KS being harmed if returned to respondent-father's care. Moreover, KS had been in foster care for much of his life, and nothing in the record contradicts the trial court's findings that KS needed permanence, stability, and finality. Respondent-father has an uncertain term of incarceration. Although incarceration alone is not a proper basis to find statutory grounds for termination, see *In re Pops*, 315 Mich App 590, 599; 890 NW2d 902 (2016), it is clear that respondent-father had never provided any kind of stability or support for KS. In contrast, KS's foster mother could provide KS with permanence, stability, and finality and was meeting all of his medical and emotional needs. KS was closely bonded with his foster mother and wanted her to

adopt him.  Therefore, the trial court did not err by finding that termination was in KS's best interests.

Affirmed.

/s/ Michael J. Kelly
/s/ Brock A. Swartzle
/s/ Matthew S. Ackerman