*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* T. V. RILEY, Minor.

UNPUBLISHED
October 28, 2021

No. 356618
Bay Circuit Court
Family Division
LC No. 18-012619-NA

Before: STEPHENS, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

Respondent, the father of TVR, appeals as of right the trial court's order terminating his parental rights under MCL 712A.19b(3)(c)(*i*) (conditions which led to adjudication continue to exist and are unlikely to be rectified within reasonable time), and (g) (failure to provide proper care or custody and no reasonable expectation of such care or custody within reasonable time). We affirm.

During the first year and few months of TVR's life, respondent and TVR's mother ("Mother") cared for him, but often left TVR and his older half siblings[1] with his maternal grandmother ("Grandmother") for extended periods with little or no notice. Respondent worked and provided some financial support for the family at times, and worked in the home to care for the family. Respondent and Mother both had a history of substance abuse issues, and they began using significant amounts of cocaine together when TVR was about a year old. Mother also would disappear at times to get high and then sleep for days. Respondent had been charged with domestic violence offenses involving Mother, and was also jailed on various charges at least three times in the first year and a half of TVR's life. When court involvement began in this case, respondent was in jail on domestic violence charges and had left TVR in Mother's care. TVR and his half siblings were officially placed with Grandmother by petitioner after Mother left TVR alone in a car on a hot day for about 30 minutes while Mother tried to steal liquor.

Respondent was released from prison about four months after court involvement began. He visited TVR twice, and the visits went well. However, respondent met Mother, used cocaine

---

[1] TVR's half siblings are the children of Mother, but not of respondent.

with her, and was rearrested within a week of his release. He spent two days in jail. On release, respondent learned Mother was sleeping with his cousin, beat his cousin up, cut off his electronic monitoring device, and absconded to avoid arrest. Respondent evaded arrest for nearly six months. During this time period, he tried to stay connected to TVR through unsanctioned FaceTime calls and visit attempts, but respondent did not contact petitioner to continue his work toward reunification.

Respondent was rearrested on April 24, 2019, and sentenced to prison, with an earliest release date of April 23, 2021. In prison, respondent participated in the available prison programming, including substance abuse and domestic violence prevention programs and job training. Respondent emphasized that he was fully committed to learning from and utilizing these services to avoid the mistakes of his past and that he would devote himself on release to doing everything necessary to reunifying with TVR. Mother participated in visits and services inconsistently for some time but eventually ceased all involvement in the case. A guardianship was put in place for Grandmother to care for TVR's older half siblings. However, petitioner recommended termination of respondent's and Mother's parental rights to TVR, so that TVR could be adopted by Grandmother.

The trial court found that there were grounds for termination of respondent's parental rights under both MCL 712A.19b(3)(c)(*i*) and (g), and found that termination was in TVR's best interests. TVR was just under four years old when respondent's parental rights were terminated. Respondent's earliest release date was just over two months away. On appeal, respondent argues that it was clearly erroneous for the trial court to find statutory grounds for termination, and to find that termination was in TVR's best interests.

This Court reviews the trial court's "factual findings and ultimate determinations on the statutory grounds for termination," as well as its "determination regarding the children's best interests" for clear error. This Court finds clear error when it is "definitely and firmly convinced that [the trial court] made a mistake." *In re White*, 303 Mich App 701, 709-710, 713; 846 NW2d 61 (2014). In applying the clear error standard, " 'regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.' " *In re Schadler*, 315 Mich App 406, 408-409; 890 NW2d 676 (2016) (citation omitted). "We review de novo the interpretation and application of statutes and court rules." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

To terminate a person's parental rights, the trial court must first find that at least one of the statutory grounds for termination has been established by clear and convincing evidence. *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000), superseded in part by statute on other grounds as stated in *In re Moss,* 301 Mich App 76, 83; 836 NW2d 182 (2013). The trial court found that there was clear and convincing evidence to establish statutory grounds for termination under MCL 712A.19b(3)(c)(*i*) and (g). Those provisions state:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

-2-

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age. [MCL 712A.19b(3)(c)(*i*) and (g).]

It is appropriate to analyze MCL 712A.19b(3)(c)(*i*) and (g) together, because "each of these grounds requires clear and convincing proof that the parent has not provided proper care and custody and will not be able to provide proper care and custody within a reasonable time." *In re Mason*, 486 Mich at 164-165 (holding that its analysis of grounds for termination under MCL 712A.19b(3)(h) applied equally to analysis of MCL 712A.19b(3)(c)(*i*) and (g)); see also *In re Pops*, 315 Mich App 590, 594 n 1; 890 NW2d 902 (2016) (noting that, under *Mason*, it was appropriate to consider prongs (c)(*i*) and (g) together).

Respondent argues that the trial court erred by finding clear and convincing evidence establishing termination grounds under MCL 712A.19b(3)(c)(*i*) and (g) because respondent was soon to be released from prison, and he had made progress in prison on addressing the issues identified by petitioner as barriers to respondent's ability to care for TVR. There was evidence respondent completed a Phase Two Substance Abuse program in prison, as well as attending NA and AA meetings, attending Michigan Intensive Domestic Violence Program classes, and attending vocational training. There was evidence that respondent abstained from drug use in prison and was likely to be released on April 23, 2021. Respondent testified at length about his plans for quickly building a stable life in which he could care for TVR, and the supports that he would have in place to achieve that goal.

However, there was also ample evidence casting doubt on respondent's ability to follow through on his plans and remain in the community without using drugs, reoffending, and further destabilizing TVR's young life. When respondent was released into the community in October 2018, after two positive visits with TVR, respondent quickly used cocaine, was jailed for two days, released again, beat up his cousin for sleeping with Mother, cut off his electronic monitor, and went on the run. While respondent was working during this period and trying to get his "money situated," he did not send money for TVR's care. Respondent tried to stay connected to TVR through unsanctioned FaceTime calls and visit attempts, but respondent did not contact petitioner to continue his work toward reunification. For almost six months after disappearing, while the instant case was ongoing, respondent made a daily choice to prioritize avoiding prison over working toward reunification with his son. This failure to prioritize TVR came after respondent assured the trial court that he wanted to be part of TVR's life and would do everything necessary to be reunited with TVR.

Respondent argues that a parent's rights should not be terminated simply because of his incarceration, see *In re Mason*, 486 Mich at 146 ("Incarceration alone is not a sufficient reason for termination of parental rights."). However, respondent's behavior when released separates this case from *Mason*. The respondent in *Mason* was in prison throughout the case, but respondent in this case was released twice, and both times made choices casting doubt on the reasonable likelihood that respondent will be able to provide proper care and custody of TVR in a reasonable time when next released. Moreover, in *Mason*, our Supreme Court was particularly concerned about the lack of opportunity for the respondent to participate in the proceedings or to receive services. See *id.* at 168. Respondent in this case has not argued that he was denied services, and he participated in the proceedings throughout the case, except when he was evading arrest.

The trial court recognized respondent's rights could not be terminated purely because he was incarcerated or because of his criminal history. Instead, the trial court emphasized respondent's "continuing pattern of behavior" wherein he appeared ready and willing to step up and change his ways while incarcerated, but did not actually do so when given the chance in the community. There was evidence that respondent had completed a Phase Two Substance Abuse program when he was in prison in the past and respondent had previously taken domestic violence prevention classes. However, respondent had continued to be involved in domestic violence, and had relapsed and used drugs extensively after these programs. Respondent was jailed multiple times during the first year and few months of TVR's life, and went through $8,000 worth of cocaine in a month with Mother about the time TVR turned one. Respondent then left TVR in Mother's care despite his knowledge of her propensity to use drugs and disappear or sleep for days.

Given respondent's past behavior, combined with his behavior both times he was released during the course of this case, there was no error in the trial court's conclusion that respondent was unlikely to provide proper care and custody for TVR within a reasonable time. Respondent explained that he was older and more motivated in following through this time because of his desire to reunify with TVR. The trial court was not convinced by respondent's explanations of why things would be different this time, and " 'regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.' " *In re Schadler*, 315 Mich App at 408-409 (citation omitted).

Moreover, the trial court emphasized that TVR was very young, and had already spent most of his life waiting for respondent to provide stability. This is a proper consideration. *Matter of Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991) ("The trial court's decision to terminate appropriately focused not only on how long it would take respondent to improve her parenting skills, but also on how long her three children could wait for this improvement.").[2] The trial court did not clearly err by finding that there was no reasonable likelihood respondent would, within a reasonable time considering TVR's age, be able to demonstrate his ability to stay in the community long-term and provide a safe, stable home for TVR without being reincarcerated or returning to

---

[2] *Matter of Dahms*, 187 Mich App at 645, concerned only MCL 712A.19b(3)(c)(*i*). However, as already noted, it is proper to analyze MCL 712A.19b(3)(c)(*i*) and (g) together. See *In re Pops*, 315 Mich App at 594 n 1.

drug use. As such, the trial court did not clearly err in determining that there was clear and convincing evidence supporting grounds for termination under MCL 712A.19b(3)(c)(*i*) and (g).

Respondent also argues that termination was not in TVR's best interests. The best-interest phase is focused on the child, not the parent, and the parent no longer has a liberty interest in parenting his child at this phase. *In re Trejo*, 462 Mich at 355-356. In determining whether termination is in a child's best interests, the trial court

> should consider a wide variety of factors that may include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (citation omitted).]

The court may also consider psychological evaluations, the child's age, and a parent's history. *In re Jones*, 286 Mich App 126, 131; 777 NW2d 728 (2009).

Respondent argues that the trial court gave insufficient weight to the existence of a bond between TVR and respondent before removal, and to the letters and cards respondent sent TVR while incarcerated. The bond between parent and child is clearly one of the appropriate factors for courts to consider during the best-interest analysis. See, e.g., *In re White*, 303 Mich App at 713-714. The trial court in this case did consider respondent's bond with TVR, but determined that respondent was "a stranger" to TVR, while TVR was strongly bonded to Grandmother. There is ample evidence in the record to support these findings, and there was no error in the trial court's consideration of TVR's bond with respondent.

Respondent also argues generally that he made progress in prison programs and was likely to be soon released at the time of termination. The trial court noted these facts, but found they were outweighed by other factors. The trial court emphasized TVR's need for permanence and stability given his young age and the significant disruption which marked the beginning of his life. The trial court stated, "In his short life, the child has never had stability or permanency with his parents." In contrast, Grandmother had provided consistent support and stability, and was willing to adopt TVR. The trial court considered that TVR's need "to be in a stable permeant [sic] placement is far greater" than TVR's need "to know his Father." The trial court is entitled to give "strong weight to the children's need for safety and stability." See *id.* at 714. There was no clear error in the trial court's best-interest decision.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ David H. Sawyer
/s/ Deborah A. Servitto