*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* YOUNKINS, Minor.

UNPUBLISHED
February 18, 2026
10:32 AM

No.   374695
Wayne Circuit Court
Family Division
LC No.   2021-000032-NA

Before:  FEENEY, P.J., and GARRETT and BAZZI, JJ.

PER CURIAM.

Respondent appeals by right the order terminating his parental rights to EY under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (other conditions supporting jurisdiction have not been rectified), and (j) (reasonable likelihood of harm if child returned to parent).  Respondent argues that petitioner failed to make reasonable efforts to reunite him with EY, the evidence was insufficient to support the grounds for termination, and terminating his parental rights was not in EY's best interests.  Because respondent's arguments lack merit, we affirm.[1]

## I.  FACTUAL BACKGROUND

EY's mother attempted to surrender him shortly after his birth.  Respondent did not attend EY's birth and was not listed as EY's father on the birth certificate.  Respondent established paternity of EY following a DNA test.  Because respondent did not have stable housing and was a parent of another child in a guardianship following a petition to terminate his parental rights to that child, the trial court assumed jurisdiction of EY.  EY was placed with a foster family that was in the process of adopting his half sister, LAY.

The trial court ordered respondent to complete a psychological evaluation, individual therapy including anger management and domestic-violence prevention, infant mental health

---

[1] The parental rights of EY's mother were also terminated, but she has not appealed that decision.

(IMH) services, visitation with the child, a substance-abuse assessment, drug screens, and substance-abuse counseling as needed. Petitioner referred respondent for those services, but he was then incarcerated for approximately two months. After his release, petitioner rereferred him for those services.

Foster-care workers were concerned about respondent's alcohol abuse, and he admitted having a drinking problem. Respondent partially complied with his service plan throughout the case. He attended 65 out of 101 scheduled parenting sessions with EY, participated in 50 out of 77 drug screens, and attended most of his therapy sessions, which included substance-abuse counseling. He also completed a parenting course and took a psychological evaluation, but he did not benefit from his service plan. He continued to struggle with alcohol use, did not parent EY in an age-appropriate manner, and never obtained stable housing. Respondent was incarcerated again approximately three months before the termination hearing and was incarcerated when the trial court terminated his parental rights. This appeal followed.

II. STATUTORY GROUNDS

Respondent argues that the trial court erred by determining that petitioner satisfied the statutory grounds to terminate his parental rights. "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). We review for clear error the trial court's factual findings regarding the statutory grounds. *In re White*, 303 Mich App 701, 709, 713; 846 NW2d 61 (2014). Factual findings are clearly erroneous if we are left with a definite and firm conviction that the trial court made a mistake. *Id*. at 709-710.

The trial court may terminate a respondent's parental rights under MCL 712A.19b(3)(j) if the court finds a reasonable likelihood that the child will be harmed if returned to the respondent's home, based on the parent's capacity or conduct. The failure to comply with and benefit from a service plan is evidence that the child will be harmed if returned to their parent's home. *White*, 303 Mich App at 710.

The trial court did not clearly err by concluding that clear and convincing evidence supported terminating respondent's parental rights under MCL 712A.19b(3)(j). During the lower-court proceedings, respondent was charged with three different criminal offenses and spent approximately five months in jail. While incarceration alone is insufficient to terminate parental rights, *In re Mason*, 486 Mich 142, 146; 782 NW2d 747 (2010), the circumstances involving at least one of respondent's charges occurred while he was intoxicated. Respondent struggled with alcohol abuse throughout this proceeding and was diagnosed with alcohol-use disorder. Respondent failed to benefit from his service plan, which included substance-abuse counseling, and continued to use alcohol. *White*, 303 Mich App at 710. Although he claimed to be sober while incarcerated, his ability to attain sobriety while incarcerated is not necessarily indicative of his ability to maintain sobriety outside of that controlled setting.

Respondent also failed to obtain and maintain suitable housing. He changed residences at least four times during these proceedings, but none of the residences were verified as appropriate. At times, he refused to provide the caseworker his address and has refused her assistance locating

suitable housing. It was unclear at the time of the termination hearing where respondent would live once released from incarceration. Respondent admitted he had no support network on which he could rely. Moreover, he failed to complete domestic-violence counseling and failed to act appropriately during some visits with the child. Accordingly, the trial court did not clearly err by determining that clear and convincing evidence supported terminating respondent's parental rights under MCL 712A.19b(3)(j). Because only one statutory basis is required to terminate parental rights, *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013), we need not address the other statutory grounds on which the trial court relied in terminating respondent's parental rights.

## III. REASONABLE EFFORTS

Respondent also argues that the trial court erred by finding that the statutory grounds for termination were met despite petitioner's failure to provide him with adequate assistance and services. To preserve for our review a claim that petitioner failed to make reasonable efforts toward reunification, a respondent must raise the issue in the trial court. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). Because respondent failed to do so, our review is limited to plain error affecting his substantial rights.[2] *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *VanDalen*, 293 Mich App at 135 (quotation marks and citations omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Utrera*, 281 Mich App at 9.

Generally, petitioner must make reasonable efforts to reunify families and prevent the termination of parental rights. MCL 712A.19a(2); *In re Atchley*, 341 Mich App 332, 337; 990 NW2d 685 (2022). Absent aggravating circumstances, termination of parental rights is inappropriate unless reasonable efforts at reunification have been made. *In re Rippy*, 330 Mich App 350, 355; 948 NW2d 131 (2019). Petitioner "must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). While petitioner must provide services supporting reunification, the respondent must participate in and benefit from such services. *Frey*, 297 Mich App at 248. The respondent has the burden of showing that they would have fared better had other services been offered. *In re Sanborn*, 337 Mich App 252, 264; 976 NW2d 44 (2021).

Petitioner made reasonable efforts to reunite respondent with EY. Petitioner provided respondent with a service plan that included IMH services, parent-partner services, domestic-violence prevention counseling, anger management counseling, and therapy. The service plan also required respondent to complete random drug testing, a psychological evaluation, and a substance-abuse assessment, along with any recommendations resulting from the evaluation and assessment. In addition, the service plan required respondent to obtain and maintain legal housing and a legal

---

[2] Though the plain-error rule does not apply to most civil cases, termination of parental rights cases are excepted. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg LLC*, 347 Mich App 280, 294 n 3; 14 NW3d 472 (2023).

source of income. Respondent partially complied with his service plan by completing a psychological evaluation; attending parenting classes; attending some therapy sessions, including substance-abuse treatment; attending about two-thirds of his parenting sessions with EY, which included IMH services; and complying with some drug testing.

The record shows, however, that respondent failed to benefit from the services because substance abuse continued to be a concern, he struggled to provide age-appropriate care for EY, and he did not obtain housing. Respondent argues that his caseworkers should have provided him with more assistance, but he fails to indicate the additional services that petitioner should have provided and how such services would have assisted him in remedying his barriers to reunification. It is unclear whether the caseworkers confirmed that respondent could not participate in services while incarcerated. Cf. *In re Pops*, 315 Mich App 590, 598-599; 890 NW2d 902 (2016) (holding that termination was not appropriate when the respondent complied with his service plan when not incarcerated). However, the lower-court proceedings occurred over approximately two years, and respondent was incarcerated for only about five months of that time, leaving ample time for him to participate in services while not incarcerated. He nevertheless did not substantially comply with his service plan when he was not incarcerated. Accordingly, respondent has failed to establish plain error affecting his substantial rights.

IV. BEST INTERESTS

Finally, respondent argues that termination of his parental rights was not in EY's best interests. We review for clear error the trial court's determination that termination of parental rights is in a child's best interests. *White*, 303 Mich App at 713. A preponderance of the evidence must support the court's best-interests determination. *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015).

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A best-interest analysis should focus on the child, not the respondent. *Moss*, 301 Mich App at 87. When determining if termination is in a child's best interests, the trial court may consider the bond between the child and the respondent, the respondent's parenting ability, the child's need for stability and permanency, and the advantages of the child's current placement over their parent's home. *Olive/Metts*, 297 Mich App at 42. The court may also consider any history of domestic violence, the respondent's compliance with their service plan, the respondent's visitation history with the child, the child's well-being in their current placement, and the potential for adoption. *White*, 303 Mich App at 714. In most cases, it is in the best interests of a child to remain with their siblings. *Olive/Metts*, 297 Mich App at 42.

The trial court did not clearly err by finding that termination of respondent's parental rights was in EY's best interests. Respondent testified that he had a bond with EY, but the caseworker disagreed. The trial court found that EY was not bonded with respondent because EY was reserved around respondent and did not recognize respondent as his father. We defer to the trial court's special opportunity to resolve matters involving witness credibility. *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

Moreover, the record demonstrates respondent's struggle to parent EY effectively. Although respondent attended approximately two-thirds of the parenting sessions offered, demonstrating some level of consistency, he refused to change EY's diaper, had difficulty grasping what was age-appropriate for EY, and did not fully engage with EY. He also smoked cigarettes and possibly drank alcohol during his parenting time. Given EY's young age, he needed stability and permanency. EY fared well in his foster-home placement, and he was bonded with his foster parents, who were interested in adopting him and had his sibling, LAY, in their care. EY's foster parents were able to provide him with a stable home environment, which respondent could not offer because of his arrests and lack of housing. Therefore, considering all the relevant factors, the trial court did not clearly err by finding that termination of respondent's parental rights was in EY's best interests.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Kristina Robinson Garrett
/s/ Mariam S. Bazzi