*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* LEACH/SPALLER-LEACH, Minors.

UNPUBLISHED
April 15, 2026
9:25 AM

No. 376180
Macomb Circuit Court
Family Division
LC Nos. 2024-000200-NA;
2024-000201-NA

Before: CAMERON, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

In this child protective proceeding, the trial court terminated the parental rights of respondent to the minor children, AL and JSL, under MCL 712A.19b(3)(b)(*ii*) (parent failed to prevent injury or abuse and there is a reasonable likelihood that the child will suffer injury or abuse if returned to parent's home), (j) (reasonable likelihood the child will be harmed if returned to parent's home), and (k)(*iii*) (parent abused the child through severe physical abuse and there is a reasonable likelihood that the child will be harmed if returned to parent's home). Respondent appeals as of right, challenging only the best interests determination of the trial court. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This matter concerns the trial court's decision to terminate respondent's parental rights to his minor children, JSL and AL, following his arrest and subsequent conviction for child abuse. The proceedings were initiated in response to allegations that respondent physically abused JSL in December 2021 by violently shaking him on multiple occasions. At the time, JSL was less than two months old and sustained a bilateral brain hemorrhage, multiple rib fractures, and retinal hemorrhaging. Respondent was subsequently arrested and charged with one count of first-degree child abuse pursuant to MCL 750.136b(2). The minor children currently reside exclusively in the custody of their mother, who was not named as a respondent in these proceedings.

The instant appeal represents the petitioner's third attempt to terminate respondent's parental rights and the second occasion on which the underlying circumstances have been

-1-

presented to this Court. See, *In re A C Leach*, 347 Mich App 26; 14 NW3d 178 (2023). The petitioner's initial two petitions were denied on the grounds that the children remained safe in their mother's custody, and respondent posed no risk of harm to the children during his incarceration. On September 17, 2024, the petitioner filed its third petition seeking termination of the respondent's parental rights at the initial disposition, reiterating the factual allegations regarding respondent's prior abuse of JSL and additionally asserting that the children were now at risk of harm following respondent's release from incarceration on August 8, 2024, and his residence in close proximity to the children's home. The petition was authorized on October 28, 2024. At the adjudication trial on April 24, 2025, respondent entered a plea of no contest, with the petition serving as the factual basis for the plea. The trial court accepted the plea and determined by a preponderance of the evidence that statutory grounds existed to exercise jurisdiction under MCL 712A.2(b)(1) and (2). Respondent further stipulated to the statutory grounds for termination as set forth in the petition, based on his criminal conviction. The trial court found that MCL 712A.19b(3)(b)(*ii*), (j), and (k)(*iii*) were established by clear and convincing evidence. The proceedings then advanced to the best-interest phase.

Petitioner presented testimony from supervisor Stephanie Fitch, who opined that termination of respondent's parental rights served the children's best interests, citing a substantial risk of future harm should respondent retain parental rights due to the likelihood of reoffending. The children's mother also supported termination and provided testimony regarding respondent's mental health and behavioral history. Additionally, petitioner called Dr. Bradley Norat, a child abuse pediatrician, who testified as to the nature and severity of JSL's injuries and observed that children with such diagnoses, when inflicted by a parent, are at continued risk of further nonaccidental injury from that parent. In contrast, respondent and his mother each testified that it was in the best interests of AL and JSL for respondent's parental rights to remain intact. Notably, respondent expressly denied causing harm to JSL, denied any mental health conditions, and denied any physical contact with the children's mother. The trial court conducted a best-interest analysis, considering the testimonial evidence and the credibility of the witnesses, and determined which outcome would best promote the welfare of the children. Ultimately, the trial court found by a preponderance of the evidence that termination of respondent's parental rights was in the best interests of AL and JSL. This appeal ensued.

## II. BEST INTERESTS

On appeal, respondent contends that the trial court clearly erred when it found by a preponderance of the evidence that termination was in the best interests of the children.

The trial court's finding that termination of parental rights is in a child's best interests is reviewed for clear error. *In re Trejo*, 462 Mich 341, 357; 612 NW2d 407 (2000). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Pops*, 315 Mich App 590, 593; 890 NW2d 902 (2016) (quotation marks and citation omitted).

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re LaFrance*

*Minors*, 306 Mich App 713, 732-733; 858 NW2d 143 (2014), citing MCL 712A.19b(5).  "[T]he focus at the best-interest stage has always been on the child, not the parent."  *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022) (quotation marks and citation omitted).  To terminate parental rights, the trial court must determine, by a preponderance of the evidence, that termination is in the child's best interests.  *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015).  In making this assessment, the trial court should weigh all available evidence before it. *In re Trejo*, 462 Mich at 356.  Among the factors the court may consider are the child's need for permanency, stability, and finality.  *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018). This Court has found that additional factors to consider when considering a child's best interests include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014) (quotation marks and citation omitted).

Consistent with his position before the trial court, respondent's principal contention against the termination of his parental rights is anchored in his claimed primacy of the best interests of JSL and AL.  On appeal, respondent articulates a set of arguments that ostensibly seek to recalibrate the evidentiary balance in favor of restoration of his parental rights. Central to respondent's appellate narrative is the assertion that the trial court "went to great lengths to focus on the father and not the children's best interests."  However, this claim is not supported by the evidentiary record, and the trial court's conclusion that termination of respondent's parental rights served the best interests of the children withstands scrutiny under the deferential clear-error standard of review governing such determinations.  *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012) (articulating the clear error standard for best-interest findings).

Respondent further contends that, contrary to the trial court's findings, he accepted full responsibility for his actions and that this factor should not have been determinative in the best-interest analysis.  In *Sturgis v Sturgis*, 302 Mich App 706, 713-714; 840 NW2d 408 (2013), this Court stated that a parent's "testimony denying criminal responsibility associated with his prior convictions . . . demonstrate[s] a pattern of blaming others rather than accepting responsibility for his actions."  Similarly, in *In re VanDalen*, 293 Mich App 120, 141-142; 809 NW2d 412 (2011), this Court affirmed a best-interest determination in the presence of unresolved questions regarding the origin of serious injuries to the children, reasoning that "the children's safety and well-being could not reasonably be assured in light of the past severe abuse of the children while in respondent's care, which remained unresolved . . . ."  These precedents underscore the legitimacy of the trial court's consideration of respondent's failure to accept responsibility for JSL's injuries as probative of an ongoing risk of harm to the children should they be returned to his care.

Moreover, a close examination of the record reveals that respondent's purported acceptance of responsibility is undermined by his own inconsistent statements.  While respondent admitted to police that he shook JSL "four to five times," his testimony during the best-interests hearing contradicted this admission, as he denied intentionality harming JSL and then claimed coercion in his confession.  Respondent further maintained that he was on probation for conduct he did not commit and posited alternative, non-abusive explanations for JSL's injuries.  The trial court found these inconsistencies to "undermine[] his credibility and reflect[] a deep denial and lack of accountability."  In addressing the delay in seeking medical treatment for JSL, respondent attempted to shift responsibility to the children's mother, a justification the court characterized as "reflect[ing] poor judgment, misplaced priorities, and an ongoing inability to recognize the

magnitude of harm." The trial court also noted respondent's inconsistent accounts regarding his mental health, including his denial of suicidal ideation when confronted with contradictory evidence, which the court interpreted as indicative of manipulation or denial. The paternal grandmother's testimony further raised concerns, as it suggested a familial environment conducive to denial and minimization of respondent's conduct. Ultimately, the trial court determined that respondent's testimony evinced an "alarming perspective that excuses authoritarian putative responses to children's behavior" and that his demeanor was "evasive, arrogant, and self-serving." Thus, respondent's claim of clear error by the trial court is entirely unfounded, as none of this evidence supports respondent's contention that he accepted responsibility for his actions. The only evidence that could potentially suggest that the trial court's finding was in error was that respondent confessed to the police. However, respondent himself explicitly denied shaking JSL and claimed that he had been pressured into making his confession, demonstrating that respondent had not truly, or at least no longer had, taken accountability for his abuse of JSL. The weight of the testimony referenced by the trial court appears to suggest, at minimum, that the trial court had a sufficient factual basis for rendering its finding of fact that respondent lacked accountability and was in denial of his guilt. Considering the full record, we are not definitely and firmly convinced that the trial court erred by viewing respondent's failure to take accountability and show remorse for his past actions as a factor that supported termination of parental rights.

Respondent also argues that the record supports that he was a good parent to the children, provided for them, and has an existing relationship with AL. Respondent's argument reflects relevant factors such as "the child's bond to the parent" and "the parent's parenting ability." *In re White*, 303 Mich App at 713. The record supports that the court took respondent's ability as a parent into account in rendering its decision to terminate his parental rights. The trial court found the children's mother "highly credible" and specifically referenced her testimony that, while it was true respondent was initially attentive to AL, he "became uncomfortable and disengaged after [JSL]'s birth." It is also true that the paternal grandmother testified that respondent was a good father. However, as noted by the trial court, the grandmother had never met JSL and had not been around AL in years. And although the trial court did not make an express finding regarding the grandmother's credibility, its comments about her testimony clearly conveyed that the court viewed it unfavorably. It is true that the children's mother testified that respondent contributed financially to the family, and respondent claimed to be employed at the time of the termination hearing. However, upon consideration of the full record, we are not definitely and firmly convinced that the trial court erred by finding termination of respondent's parental rights in the children's best interests merely because respondent may have provided financial support and previously had a relationship with AL. By the time respondent's parental rights were terminated, he had not seen either child in over four years, and neither child asked their mother about respondent regularly. We therefore conclude that evidence of respondent's present aptitude as a parent and bond with the children is tenuous at best and does not rise to the level of demonstrating that the conclusion of the trial court that termination was in the best interests of the children was in error.

Respondent also contends that the children are safe in their mother's care, and that the mother could protect her children if respondent were allowed some type of visitation. Respondent is correct that JSL is currently meeting all of his milestones, and there are no outstanding medical concerns for either child. However, both Fitch and the children's mother opined that termination

was the best way to ensure the children's safety. Moreover, when making its determination to terminate the parental rights of respondent, the trial court reasoned:

> Mother testified that the safest option for her children is termination of parental rights, given that father has demonstrated what he's capable of. She recounted instances of domestic violence, including father pushing her while eight weeks—I'm sorry, eight months pregnant, breaking objects, threatening suicide in [AL's] presence, and multiple threats of self-harm. She described an incident which father admitted to physical altercations with his sister and uncle and disclosed that father indicated to her that he was physically abused in his own childhood . . . .

> * * *

> The court also notes that the [guardian ad litem] and [petitioner] are unanimous in their position that termination is in the best interest of the children. Their consistent professional judgment is persuasive. The children require—require and deserve permanency, safety, and caregivers who are attuned to their emotional and physical needs.

> The father demonstrates—he remained—he remains a significant risk to the safe—to their safety and well-being. [The] court is not convinced that he would not snap again under the stressors of parenting, given his inability to manage his emotions—emotions properly even after receiving services.

> The] court does find that mother has adequately addressed the special needs of [JSL] that have resulted from fathers intentional acts and that [AL] is doing well in her care. Accordingly, the Court finds that the risk of future harm is too great to return the children to care of a parent who denies responsibility, exhibits no genuine remorse, and showed no evidence of changed behavior.[1]

There is abundant evidence in the record supporting the contention that the best way to keep the children safe was to terminate respondent's parental rights. While respondent believes that the children's mother could keep them safe, the testimony of Fitch, petitioner's representative, supports that this effort would be greatly aided by termination. The record reveals that respondent's physical abuse has permanently impacted JSL and will continue to do so in the future. Furthermore, while the children are presently safe and healthy, the trial court noted that the professional judgment of multiple witnesses supported that there is a high risk of respondent reoffending and abusing his children further. The trial court determined that respondent's abuse reflected a pattern of violent behavior and was not convinced that, even with treatment, respondent

---

[1] The trial court also gave great weight to the testimony of Dr. Norat who "expressed serious concerns regarding future abuse based on clinical experience with abusive parents who reoffend following reunification."

would be able to control his emotions and not abuse the children. Respondent's abuse was wholly at odds with his duties as a parent. Terminating respondent's parental rights would keep the children from contact with an individual who has severely harmed one of them and would eliminate any further risk to the children. On this record, the trial court did not clearly err by finding that safety concerns supported termination of respondent's parental rights.

Respondent further contends that he should have been given the opportunity to complete a parent agency agreement. It is true that petitioner generally has an affirmative duty to make reasonable efforts toward reunifying families before seeking the termination of a parent's parental rights. *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c), and MCL 712A.19a(2). As a part of this process, petitioner "must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification."[2] *In re Hicks/Brown*, 500 Mich at 85-86. However, there are exceptions to petitioner's obligation to engage in reasonable efforts toward reunification, *id*. at 85 n 4, citing MCL 712A.19a(2), and we conclude that the facts of the instant matter reflect an exception. Such efforts are not required when a respondent has been convicted of "[a] felony assault that results in serious bodily injury to the child or another child of the parent." MCL 712A.19a(2)(b)(*iv*). Respondent pleaded no contest to first-degree child abuse, MCL 750.136b(2), an assaultive felony that arose from the injuries he inflicted on JSL. In light of this conviction, we conclude that reasonable efforts toward reunification were not required. MCL 712A.19a(2)(b)(*iv*).

In this matter, Fitch testified that reunification posed substantial risk of harm to the children, and thus petitioner would have had no reason to voluntarily agree to enter into a parent agency agreement to facilitate reunification. Nor was respondent entitled to services in this matter. More importantly, respondent's argument fails to appreciate that the focus of the best-interest stage was on JSL and AL, and not the potential improvements respondent might achieve through services. *In re Atchley*, 341 Mich App at 346. While it is true that a "parent's compliance with his or her case service plan" is relevant to evaluating a child's best interests, *In re White*, 303 Mich App at 713-714, respondent has identified no authority, and this Court is aware of no such authority, supporting the novel proposition that the possibility of improvement from a hypothetical parent agency agreement undermines a best-interest determination that is otherwise supported by the record.

Respondent's final argument on appeal relates to the timing of the current petition. Namely, respondent contends that the September 17, 2024 petition was filed too late and should have been filed at the time respondent pleaded to the criminal charges. However, the relevant court rule does not impose a time limit on the filing of a petition for the termination of parental rights. MCR 3.977. This Court has previously upheld terminations based on a respondent's prior abuse of children when the respondent had already been charged and incarcerated, even when, like the instant matter, the case came before this Court years after the initial conviction. *In re Vasquez*, 199 Mich App 44; 501 NW2d 231 (1993). Moreover, this claim is irrelevant to this Court's review of respondent's sole issue raised on appeal: whether the trial court clearly erred by deciding that

---

[2] MCL 712A.13a(1)(d) specifies that a "parent/agency agreement or a parent/agency treatment plan" are merely other terms for a "case service plan."

termination of respondent's parental rights was in the best interests of the children. *In re Keillor*, 325 Mich App at 94 as the claim presents an entirely procedural question and is therefore not related to this Court's review of the trial court's best-interest analysis.

Considering record as a whole, we are not definitely and firmly convinced that the trial court erred by finding termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Thomas C. Cameron
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle