*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MONZO/HANSEN, Minors.

UNPUBLISHED
June 09, 2026
10:55 AM

No. 378108
St. Clair Circuit Court
Family Division
LC No. 23-000033-NA

Before: BAZZI, P.J., and RICK and MALDONADO, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor children, JM and BH, under MCL 712A.19b(3)(b)(*ii*) (parent failed to prevent physical or sexual abuse); (c)(*i*) (conditions leading to adjudication continue to exist); (c)(*ii*) (failure to rectify other conditions leading to adjudication); (g) (failure to provide proper care or custody); and (j) (reasonable likelihood of harm if the child is returned to parent's custody). We affirm.

## I. FACTUAL BACKGROUND

In October 2023, petitioner, the Department of Health and Human Services (DHHS), alleged that mother was using methamphetamine and allowing JM's father to have access to JM.[1] Mother denied those allegations. The children were made temporary court wards in December 2023 and removed from mother's care in January 2024. The record contained conflicting evidence regarding mother's continued contact with JM's father. Mother denied allowing JM's father to see JM and testified that she could not remember the last time she willingly spent time with him. But testimony also indicated that mother and JM's father stayed together in a motel after the children were removed, and that mother's vehicle was later seen outside the hotel where JM's

---

[1] Before these proceedings, the parental rights of JM's father, who was then married to respondent, were terminated because he sexually abused JM. BH's father was incarcerated at the time of these proceedings. He is not a party to this appeal.

father was staying.[2] JM's father also appeared at one of BH's wrestling matches and at a probation-violation hearing for BH.

During the proceedings, mother was generally consistent with supervised parenting time and shared a bond with the children. But the visits remained supervised throughout the proceedings. Testimony established that mother sometimes discussed the case with the children during visits and had to be redirected. There were also concerns involving mother's adult children during parenting time. According to the foster-care supervisor, the adult siblings "could get combative if they didn't agree with how things were going during the parenting time. And they could get combative with workers or case aides that were supervising."

Mother held several jobs during the case, but the evidence showed that she did not maintain employment sufficient to support herself and the children. She also struggled with housing and substance use. When the children first entered foster care, mother was staying with JM's father in a motel. She later rented a home from BH's father's family, but she left that home after the water was shut off and a dispute arose over unpaid utilities. Mother then stayed briefly with her sister before moving to a shelter. In July 2025, after the termination petition had been filed, mother entered a rehabilitation program in Arizona that provided housing and employment. But the facility was not equipped to provide housing for the children. Thus, mother returned to Michigan for the termination hearing before completing the program. Mother was also required to participate in weekly drug screens. She missed 16 drug screens, each of which was considered positive, and she tested positive for methamphetamine and amphetamine four times. The fourth positive test occurred in April 2025, on a day when mother had parenting time with the children. The termination petition was filed shortly thereafter, and mother's parenting time was suspended.

The termination hearing began on August 6, 2025, and continued on August 19, 2025. Brandi Riddell-Schalm, a foster-care supervisor with the Ennis Center for Children, testified regarding mother's housing instability, substance use, employment history, parenting time, and continued contact with JM's father. Riddell-Schalm testified that termination was in the children's best interests because the children needed safety, stability, and permanency. Mother opposed termination, asked for more time, and testified that she would "do her best" to provide a more stable and suitable environment for the children. Mother also testified that her niece was interested in taking the children. The trial court took the matter under advisement and issued written findings of fact and conclusions of law on September 5, 2025. The court found clear and convincing evidence supporting statutory grounds for termination. It also found, by a preponderance of the evidence, that termination was in the children's best interests. This appeal followed.

II. ANALYSIS

A. STATUTORY GROUNDS

---

[2] Mother disputed this allegation and countered by explaining that her truck was broken down at the time and therefore could not have been at his hotel. However, she provided no additional evidence to support that assertion.

Mother first argues that the trial court clearly erred when it found grounds to terminate mother's parental rights. We disagree.

The trial court's finding that a statutory ground for termination has been established by clear and convincing evidence is reviewed for clear error. *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Pops*, 315 Mich App 590, 593; 890 NW2d 902 (2016) (quotation marks and citation omitted).

" 'To terminate parental rights, a trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence.' " *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 635; 853 NW2d 459 (2014), quoting *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). The trial court found statutory grounds for termination under MCL 712A.19b(3)(b)(*ii*), (c)(*i*), (c)(*ii*), (g), and (j). Termination is proper under MCL 712A.19b(3)(b)(*ii*) if:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> * * *
>
> (*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

In its written findings, the trial court explained:

> [T]here is clear and convincing evidence that a child or sibling of the child has suffered physical or sexual abuse and [mother], who had the opportunity to prevent the physical or sexual abuse, failed to do so and that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home. [JM's father] sexually abused [JM] and both [JM] and [BH] were kept in [mother]'s care until she was unable to protect them by continuing to maintain contact with [JM's father]. As noted above, Ms. Riddell-Schalm has concerns [mother] will still have contact with [JM's father] based upon the reports of seeing [mother]'s vehicle at [JM's father]'s location. [Mother] and [JM's father] were seen entering into [BH]'s sporting event together. When [Mother] was asked about this event, she indicated she was not in charge of his actions. However, [mother] is in charge of her own actions and she has not shown the Court she is able to make changes for her children's benefit[]. [JM] is too young and could be exposed to physical or emotional harm by [mother]'s decision to keep [JM's father] in her life.

The trial court did not clearly err by finding that termination was warranted under MCL 712A.19b(3)(b)(ii). The first requirement was satisfied because JM's father sexually abused

JM, and his parental rights to JM were terminated on that basis. Mother does not meaningfully dispute that JM suffered sexual abuse or that she knew of that abuse during these proceedings.

The record also supports the trial court's finding that mother had the opportunity to prevent further abuse and failed to do so. After JM's father's parental rights were terminated, mother was alleged to have taken JM to see him and to have allowed JM to communicate with him through FaceTime. Even after the children were removed, mother remained in contact with JM's father. Testimony in the record indicates that mother stayed with him in a motel, her vehicle was later observed at his hotel, and he appeared at events involving BH. Although mother disputed some of that evidence and denied allowing JM's father access to JM, the trial court was entitled to credit the contrary testimony and to draw reasonable inferences from mother's continued contact with him. See *In re Ellis*, 294 Mich App at 33 ("[R]egard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it."); *In re Gonzales/Martinez*, 310 Mich App 426, 431-432; 871 NW2d 868 (2015) (stating that a respondent's decision to place a relationship with an abusive partner over the needs of the children can support a finding that the respondent is likely to continue placing personal desires over the children's welfare).

Finally, the record supported the trial court's finding that there was a reasonable likelihood that the children would suffer injury or abuse in the foreseeable future if placed in mother's home. Mother did not promptly sever her relationship with JM's father despite his sexual abuse of JM. She finalized the divorce years later, in April 2025, and characterized it as having been "forced" to divorce JM's father. When asked about JM's father appearing at BH's sporting event, mother emphasized that she could not control his actions. As the trial court correctly observed, however, mother remained responsible for her own choices. Those choices supported the court's concern that mother would continue to allow JM's father access to the children. That risk was especially acute for JM given the prior sexual abuse, and it also supported the court's concern for BH under the doctrine of anticipatory neglect. See *In re Mota*, 334 Mich App 300, 323; 964 NW2d 881 (2020) ("The doctrine of anticipatory neglect provides that how a parent treats one child is probative of how that parent may treat other children."). Viewed as a whole, the record did not leave us with a definite and firm conviction that the trial court made a mistake by finding clear and convincing evidence to terminate mother's parental rights under MCL 712A.19b(3)(b)(*ii*).[3]

## B. BEST INTERESTS

Mother also argues that the trial court clearly erred in its determination that a preponderance of the evidence supported that it was in the best interests of the children to terminate her parental rights under MCL 712A.19b(5). We disagree.

---

[3] Only one statutory ground must be proven to proceed with termination. MCL 712A.19b(3). Because the record clearly supports that termination was appropriate under MCL 712A.19b(3)(b)(*ii*), we need not review mother's claims related to the other statutory grounds for termination.

We review the trial court's finding that termination of parental rights is in a child's best interests for clear error. *In re Trejo*, 462 Mich at 357. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Pops*, 315 Mich App at 593 (quotation marks and citation omitted).

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re LaFrance Minors*, 306 Mich App 713, 732-733; 858 NW2d 143 (2014), citing MCL 712A.19b(5). "[T]he focus at the best-interest stage has always been on the child, not the parent." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022) (quotation marks and citation omitted). The trial court must find, by a preponderance of the evidence, that termination is in the children's best interests. *In re Gonzales/Martinez*, 310 Mich App at 434. In making that determination, the court should consider the whole record. *In re Trejo*, 462 Mich at 356. Relevant considerations include the child's need for permanency, stability, and finality. *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 704; 846 NW2d 61 (2014).

Mother primarily challenges the trial court's best-interest finding on the basis of relative placement. A trial court must consider a child's placement with relatives when determining best interests. *In re Atchley*, 341 Mich App at 347. "Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court 'may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests.' " *Id.*, quoting *In re Olive/Metts*, 297 Mich App at 43. And "[a] trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *In re Olive/Metts*, 297 Mich App at 43.

The trial court did not clearly err in its treatment of this issue. Mother testified that a niece was interested in taking the children. According to mother, the niece had passed a background check and needed only a housing assessment. But mother's testimony was the only evidence supporting that assertion. The niece had not been approved as a placement at the time of the termination hearing, and the foster-care supervisor testified that other relatives identified by mother were not willing or able to take the children. On this record, the existence of a possible, unapproved relative placement did not render the trial court's best-interest finding clearly erroneous.

Mother also argues that termination would not provide the children with permanency, stability, or finality. The record supports the opposite conclusion. The children were doing well together in their foster-care placement, and Riddell-Schalm testified that termination was in their best interests because it would provide safety and stability. The trial court found:

Fortunately, the children are doing well in foster placement together. All of their basic needs and medical appointments have been met. [JM] has been given tutoring in order to progress in reading skills and has mental health counseling. She is

bonded with her foster parents and is able to work on their farm and stay connected with her brother, [BH], who is also there. [BH] is also having fewer behavioral issues and was doing his school work and complying with rules. He enjoys playing sports and wishes to keep his grades up for that . . . . Therefore, the Court must look to what stability can be established for [BH] at this time. He is together with his sibling, he has a schedule and a safe and secure placement with his foster parents. It is in the minor children's best interest to continue being together in their foster placement with consistent parenting for their growth and maturity throughout their lives.

The trial court did not clearly err by giving substantial weight to the children's need for stability and permanency. Maintaining mother's parental rights would have meant leaving the children waiting while mother attempted to address the same barriers that had remained unresolved for more than a year. Mother had not maintained sobriety, stable housing, or sufficient income, and the court remained concerned about her contact with JM's father. The record also showed that the children were placed together, their needs were being met, and they were benefiting from the structure and security of their foster placement.[4] Considering the record as a whole, a preponderance of the evidence supported the trial court's finding that termination of mother's parental rights was in the children's best interests.

Affirmed.

/s/ Mariam S. Bazzi
/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado

---

[4] Although BH's father intended to work toward reunification after his release from incarceration, that possibility was speculative at the time of termination and did not undermine the trial court's best-interest analysis as to mother.